Argued and submitted March 9, 1995, resubmitted June 11, 1998, decision of the Court of Appeals reversed; order of the circuit court affirmed and case remanded to circuit court for further proceedings December 29, 2000

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## JERRY LEE FLEETWOOD,
*Petitioner on Review.*

## (CC CR92167; CA A77709; SC S41311)

16 P3d 503

Ingrid A. MacFarlane, Deputy Public Defender, Salem, argued the cause for petitioner on review. With her on the briefs were Sally L. Avera, Public Defender, and Louis R. Miles, Deputy Public Defender.

Rives Kistler, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the briefs were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Janie M. Burcart, Assistant Attorney General.

David E. Groom, Salem, filed a brief for *amicus curiae* Oregon Criminal Defense Lawyers Association. With him on the brief was David G. Terry, Roseburg.

Thomas M. Christ, Portland, filed a brief for *amicus curiae* ACLU Foundation of Oregon, Inc.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, and Durham, Justices.**

DURHAM, J.

---

** Kulongoski, Leeson, and Riggs, JJ., did not participate in the consideration or decision of this case. Unis, J., retired June 30, 1996, and did not participate in the decision of this case. Fadeley, J., retired January 31, 1998, and did not participate in the decision of this case. Graber, J., resigned March 31, 1998, and did not participate in the decision of this case.

## DURHAM, J.

Defendant seeks review of a decision of the Court of Appeals that reversed the trial court's order suppressing evidence obtained through police use of an electronic listening device. *State v. Fleetwood*, 127 Or App 558, 872 P2d 998 (1994).[1] Defendant argues that Oregon law did not authorize the police to intercept and record the communications involved here and that, as a consequence, Oregon statutes required the trial court to suppress the evidence of those communications. We quote below the statutes that pertain to that argument. Defendant also argues that the police conduct here was a search or seizure that required a warrant, and that the trial court correctly suppressed the evidence of the oral communications obtained by the police to protect his rights under Article I, section 9, of the Oregon Constitution.[2] For the reasons discussed below, we reverse the decision of the Court of Appeals.

---

[1] The court ordered reargument in this case and a companion case, *State v. Cleveland*, 331 Or 531, 16 P3d 514 (2000), in light of the approval by the voters in 1996 of an initiative, known as Measure 40 (1996), that amended the law of search and seizure under the Oregon Constitution. In *Armatta v. Kitzhaber*, 327 Or 250, 959 P2d 49 (1998), the court determined that

"because Measure 40 was not adopted in compliance with Article XVII, section 1[, of the Oregon Constitution, prohibiting adoption of multiple constitutional amendments in a single initiative measure], we hold that it is void in its entirety."

*Id.* at 285 (footnote omitted). Consequently, Measure 40 has no effect on the decision in this case.

Moreover, the court expresses no opinion in this case on the potential retroactive applicability and constitutionality of Senate Bill 936 (effective June 12, 1997). Or Laws 1997, ch 313. Those issues are pending before the court in another proceeding. *State v. Fugate*, 154 Or App 643, 963 P2d 686 (1998), *mod and adh'd to on reconsideration* 156 Or App 609, 969 P2d 395 (1998), *rev allowed* 328 Or 275, 977 P2d 1173 (1999) (argued October 14, 1999). Section 38 of Senate Bill 936 enacted a retroactive statute regarding the exclusion of evidence in a criminal action. The state advances no argument that Senate Bill 936 (1997) requires reversal of the trial court's order suppressing evidence in this case.

[2] Article I, section 9, of the Oregon Constitution, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

The relevant facts are undisputed. Reineccius was a police informant who had provided reliable information to the police on several occasions. On May 27, 1992, Reineccius told Eiseland, a detective with the Wasco County Sheriff's Office, that defendant had agreed to sell marijuana to Reineccius. On May 28, 1992, Eiseland equipped Reineccius with a hidden radio transmitter known as a body wire. At no time did the state obtain an *ex parte* order from a court authorizing the police to intercept communications or obtain conversations by means of the body wire.

Reineccius drove to defendant's home. Eiseland followed in a car with a radio receiver. The radio receiver permitted Eiseland to listen to and tape record any conversations or other sounds that the body wire on Reineccius could detect. Eiseland turned on his radio receiver as Reineccius approached defendant's front door. Defendant admitted Reineccius to the home. Eiseland listened to and recorded conversations inside defendant's home between Reineccius and defendant, and between defendant and his mother. Eiseland also listened to and recorded defendant's side of a telephone call that he placed from his home to another person.

Defendant and Reineccius then left defendant's home in Reineccius's car. Eiseland followed them. Reineccius' car stopped on a public street. A juvenile female approached the car, held a conversation with defendant, and sold marijuana to him. Eiseland listened to and recorded the conversation between defendant and the juvenile female. Defendant then gave the marijuana to Reineccius. Police arrested defendant and charged him with delivery of a controlled substance. ORS 475.992.

Defendant moved to suppress the evidence of all communications obtained through use of the body wire. Defendant contended that the police obtained all the evidence in violation of statutes governing the use of a body wire, particularly ORS 133.721 *et seq.* and ORS 165.540, and that Article I, section 9, of the Oregon Constitution, required them to obtain a warrant before obtaining evidence through use of a body wire.[3] The trial court held that the police

---

[3] Defendant also argued that the use of the body wire was a search that violated his reasonable expectation of privacy under the Fourth, Fifth, and

obtained the body wire evidence in conformance with ORS 165.540(5)(a)(B). However, the court concluded that the use of the body wire was a search under Article I, section 9, of the Oregon Constitution. Because the police conducted the search without a warrant and no exception to the warrant° requirement applied, the court concluded that the search violated Article I, section 9, and, accordingly, granted defendant's motion to suppress.

The state appealed the order granting the motion to suppress. *See* ORS 138.060(3) (authorizing state to appeal from pretrial order suppressing evidence). The Court of Appeals reversed and remanded, citing *State v. Bass*, 126 Or App 303, 868 P2d 761 (1994). *Bass* held that, under ORS 165.540(5)(a)(B), the police may tape record a conversation intercepted by a body wire, without first obtaining authorization under a court order, if they have probable cause to believe that a party to the conversation with a police informant is about to commit a felony drug crime. The *Bass* court also rejected the defendant's constitutional arguments. *Id.* at 307.

Defendant argues that compliance by police with ORS 165.540 relieves them of criminal liability for unlawfully obtaining a conversation, but does not render evidence of the conversation obtained under that statute admissible in court. Defendant contends that the pertinent statutes obligate the police to obtain an *ex parte* order authorizing interception of the communications at issue here. Defendant concludes that the failure of the police to secure a court order in this case renders evidence derived from the interception subject to suppression.

The trial court's order suppressed evidence of communications obtained through police use of the body wire. That evidence consists of Eiseland's testimony about the conversations and statements that he heard through the radio receiver that he tuned to the body wire and the tape recordings that Eiseland made of those conversations and statements. As we will discuss below, the conversations occurred

---

Fourteenth Amendments to the United States Constitution. However, defendant did not renew his federal constitutional arguments in his appeal to the Court of Appeals or in his petition for review to this court.

between defendant and four persons: Reineccius, defendant's mother, the juvenile female, and an unidentified person to whom defendant spoke by telephone. This appeal concerns only the correctness of the order suppressing the body wire evidence described above.[4]

■■    The issues of the authority of the police in this context, and the admissibility of evidence obtained through police use of a body wire, require us to discern the legislature's intention in enacting the pertinent statutes. We approach that task by examining the text and context of those statutes. If those sources unambiguously disclose the legislature's intent, then our inquiry is at an end. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). More specifically, with respect to the present case, if our statutory construction demonstrates that the conduct of the police exceeded their authority, and that Oregon statutes specify the consequence of the unauthorized conduct, we need not address defendant's constitutional arguments. Logic, not mere editorial taste, compels that approach. This court routinely analyzes the legality of the acts of an official exercising delegated authority by first examining ordinary rules of law, including the scope and limits of an official's legal authority, before addressing any constitutional issue. *See State v. Lowry*, 295 Or 337, 343, 667 P2d 996 (1983) (stating principle).

■    We turn to the pertinent statutes.[5] We begin by considering two statutes that authorize the courts to issue *ex*

_____

[4] Under ORS 133.735, evidence derived from the interception and recording of oral communications in violation of ORS 133.724 is subject to suppression. The state may have evidence against defendant derived from oral communications obtained in violation of ORS 133.724. The state also may have evidence derived from witnesses such as Reineccius, Eiseland, defendant's mother, or the juvenile female about what those witnesses saw or heard personally without aid of the body wire and not in violation of ORS 133.724. On remand, the trial court may be called on to decide in the first instance whether any of the testimony of those witnesses, or any other evidence, is subject to suppression under ORS 133.735 as evidence derived from unlawfully obtained evidence.

[5] We address the current version of the statutes. Although the legislature has amended some statutory provisions since the time of defendant's arrest, none of those amendments affects our analysis here.

*parte* orders authorizing interception of certain wire, electronic, or oral communications by the police. The first statute is ORS 133.724, which provides, in part:

"(1) An ex parte order for the interception of wire, electronic or oral communications may be issued by any circuit court judge upon written application made upon oath or affirmation of the individual who is the district attorney or a deputy district attorney authorized by the district attorney for the county in which the order is sought. The application shall include:

"* * * * *

"(c) A statement demonstrating that there is probable cause to believe that an individual is committing, has committed or is about to commit, a particular felony of murder, kidnapping, arson, robbery, bribery, extortion or other crime dangerous to life and punishable as a felony, or a crime punishable as a felony under ORS 475.992 or 475.995, or any conspiracy to commit any of the foregoing crimes;

"* * * * *

"(3) Upon examination of such application and evidence the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire, electronic or oral communications within the state if the judge determines on the basis of the facts submitted by the applicant that:

"(a) There is probable cause for belief that an individual is committing, has committed or is about to commit a particular crime described in subsection (1)(c) of this section * * *."[6]

---

[6] ORS 133.721 provides, in part:

"As used in ORS 41.910, 133.724 * * * and this section, unless the context requires otherwise:

"* * * * *

"(5) 'Intercept' means the acquisition, by listening or recording, of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device.

"* * * * *

"(7) 'Oral communication' means any oral communication, other than a wire communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation.

The second pertinent statute is ORS 133.726, which provides, in part:

"(1)   An ex parte order for the obtaining of any conversation in any county of this state under ORS 165.540 (5)(a) may be issued by any judge as defined in ORS 133.525 upon written application made upon oath or affirmation of the district attorney or a deputy district attorney authorized by the district attorney for the county in which the order is sought or upon the oath or affirmation of any peace officer. The application shall include:

"* * * * *

"(b)   A statement demonstrating that there is reasonable cause to believe that a person whose conversation is to be obtained is engaged in committing or has committed a particular felony and that the obtaining of the conversation will yield evidence thereof; and

"* * * * *

"(3)   Upon examination of the application and evidence, the judge may enter an ex parte order, as requested or as modified, authorizing or approving obtaining of conversations within the state if the judge determines on the basis of the facts submitted by the applicant that:

"(a)   There is reasonable cause to believe that a person is engaged in committing or has committed a particular felony."

"* * * * *

"(10) 'Wire communication' means any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable or other like connection between the point of origin and the point of reception, whether furnished or operated by a public utility or privately owned or leased."

ORS 133.735(1) provides:

"Any aggrieved person in any trial, hearing or proceeding in or before any court, department, officer, agency, regulatory body or other authority of the state, or a political subdivision thereof, may move to suppress the contents of any wire, electronic or oral communication intercepted under ORS 133.724 or evidence derived therefrom, on the grounds that:

"(a) The communication was unlawfully intercepted;

"(b) The order of authorization or approval under which it was intercepted is insufficient on its face; or

"(c) The interception was not made in conformity with the order of authorization or approval."

We also consider a third statute, ORS 165.540, which provides, in part:

"(1)   Except as otherwise provided in ORS 133.724 or subsections (2) to (7) of this section, no person shall:

"(a)   Obtain or attempt to obtain the whole or any part of a telecommunication or a radio communication to which such person is not a participant, by means of any device, contrivance, machine or apparatus, whether electrical, mechanical, manual or otherwise, unless consent is given by at least one participant.

"* * * * *

"(c)   Obtain or attempt to obtain the whole or any part of a conversation by means of any device, contrivance, machine or apparatus, whether electrical, mechanical, manual or otherwise, if all participants in the conversation are not specifically informed that their conversation is being obtained.

"* * * * *

"(5)(a)   The prohibitions in subsection (1)(c) of this section do not apply:

"(A)   When a law enforcement officer obtains a conversation between the officer or someone under the officer's direct supervision pursuant to a court order under ORS 133.726, providing the person who obtains or records the conversation does not intentionally fail to record and preserve the conversation in its entirety.

"(B)   When a law enforcement officer obtains a conversation between the officer, or someone under the direct supervision of the officer, and a person who the officer has probable cause to believe has committed, is engaged in committing or is about to commit a crime punishable as a felony under ORS 475.992 or 475.995 or the circumstances at the time the conversation is obtained are of such exigency that it would be unreasonable to obtain the court order under ORS 133.726, providing the person who obtains or records the conversation does not intentionally fail to record and preserve the conversation in its entirety.

"* * * * *

"(9)   Violation of subsection (1) of this section * * * is a Class A Misdemeanor."[7]

We determine the legislature's intention in enacting the foregoing statutes by construing their words together, taking care not to insert what the legislature has omitted or to omit what the legislature has inserted. *State v. Castrejon*, 317 Or 202, 206, 856 P2d 616 (1993) (quoting ORS 174.010). ORS 165.540 provides a useful starting point in that endeavor. Any evidence of a wire or oral communication that the state intercepts in violation of ORS 165.540 is inadmissible whether or not the interception might have satisfied other pertinent statutes. ORS 41.910(1).[8] Thus, we begin by examining whether police intercepted any wire or oral communication in violation of ORS 165.540.

---

[7] ORS 165.535 provides, in part:

"As used in ORS 41.910 * * * 133.724, [and] 165.540 * * *:

"(1) 'Conversation' means the transmission between two or more persons of an oral communication which is not a telecommunication or a radio communication.

"* * * * *

"(4) 'Telecommunication' means the transmission of writing, signs, signals, pictures and sounds of all kinds by aid of wire, cable or other similar connection between the points of origin and reception of such transmission, including all instrumentalities, facilities, equipment and services (including, among other things, the receipt, forwarding and delivering of communications) incidental to such transmission."

ORS 133.736 provides, in part:

"(1) Any aggrieved person, as defined in ORS 133.721, in any trial, hearing or proceeding in or before any court, department, officer, agency, regulatory body or other authority of the state, or a political subdivision thereof, may move to suppress under ORS 41.910 recordings of any conversation obtained under ORS 165.540(5)(a), or the testimony of any individual not a party thereto regarding any conversation obtained under ORS 165.540(5)(a).

"* * * * *

"(4) As used in this section, 'conversation' has the meaning provided in ORS 165.535."

[8] ORS 41.910(1) provides, in part:

"Evidence of the contents of any wire or oral communication intercepted:

"(a) In violation of ORS 165.540 shall not be admissible in any court of this state, except as evidence of unlawful interception.

"* * * * *

"(2) Evidence made inadmissible under this section due to noncompliance by a law enforcement officer with the conditions of ORS 165.540(5)(a) shall only be inadmissible under this section pursuant to a motion to suppress under ORS 133.736."

### 1. *Defendant's telephone call.*

We first consider the body wire evidence of defendant's statements that he uttered into the telephone during the telephone call from his home.

ORS 165.540(1)(a) addresses the obtaining or the attempt to obtain, by means of a device, of the whole or any part of a "telecommunication." ORS 165.540(1)(c) addresses the obtaining or the attempt to obtain, by means of a device, of the whole or any part of a "conversation." We first inquire whether defendant's utterances into the telephone constituted a "conversation" or a "telecommunication."

ORS 165.535(1) provides that a "conversation" consists of an "oral communication which is not a telecommunication." ORS 133.721(7) defines "oral communication" to mean

> "any oral communication, other than a wire communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation."

ORS 133.721(10) defines "wire communication" to mean

> "any communication made in whole or in part through the use of facilities for the transmission of communications by aid of wire, cable or other like connection between the point of origin and the point of reception * * *."

Defendant's utterance of words into the telephone was a "wire communication" under ORS 133.721(10), because his statements constituted a communication "made in whole or in part through the use of facilities for the transmission of communications by aid of wire, cable or other like connection * * *." Nothing in the record indicates that defendant expected that anyone was intercepting his telephone call through the use of a device. ORS 133.721(7) excludes the kind of wire communication shown here from the statutory definition of "oral communication." Consequently, defendant's telephone call did not constitute a "conversation" under ORS 165.535(1).

ORS 165.535(4) defines "telecommunication" in part to mean the

"transmission of * * * sounds of all kinds by aid of wire, cable or similar connection between the points of origin and reception of such transmission * * *."

A person's utterance of words into a telephone during a telephone call is an instance of transmitting the person's words by wire between the point of origin and the point of reception. Consequently, defendant's act of speaking into the telephone was a "telecommunication" within the meaning of ORS 165.535(4).

ORS 165.540(1)(a) prohibits any person from obtaining or attempting to obtain "the whole or any part of a telecommunication * * * to which such person is not a participant" by means of a device, "unless consent is given by at least one participant." Neither Reineccius nor Eiseland was a participant in defendant's telecommunication, and neither defendant nor the other participant in the telephone call consented to the state's obtaining defendant's statements during the call by the body wire device. We conclude from the foregoing that the state's conduct in obtaining evidence, by means of a device, of defendant's utterances into his telephone did not comply with ORS 165.540(1)(a).[9]

■ ORS 41.910(1)(a) prohibits admission of evidence of any wire or oral communication "intercepted" in violation of ORS 165.540. ORS 133.721(5) defines "intercept" to mean "the acquisition, by listening or recording, of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device." The state's act of using a body wire to listen to and record the contents of defendant's statements during the telephone call was an "interception" of a wire communication within the definition in ORS 133.721(5). ORS 41.910(1)(a) rendered that evidence inadmissible in this case. The trial court's order suppressing the body wire evidence of defendant's statements intercepted during the telephone call was correct.

---

[9] The introductory clause in ORS 165.540(1) indicates that several exceptions apply to that statute, *i.e.*, it applies "[e]xcept as otherwise provided in ORS 133.724 or subsections (2) to (7) of this section * * *." We have examined those exceptions and conclude that none applies here.

## 2. *Defendant's conversations with his mother and the juvenile female.*

■     As already noted, the state obtained evidence, by body wire, of defendant's face-to-face conversations with his mother and the juvenile female. Each of those communications was a "conversation" under the definition stated in ORS 165.535(1). We turn to the question whether obtaining those conversations violated ORS 165.540(1)(c).

The state acknowledges that no one informed all participants in those conversations that the state would be obtaining the conversations. *See* ORS 165.540(1)(c) (providing that all participants must be informed specifically that their conversation is being obtained). However, the state, relying on ORS 165.540(5)(a)(B), argues that the prohibition in ORS 165.540(1)(c) does not apply "[w]hen a law enforcement officer obtains a conversation between the officer, or someone under the direct supervision of the officer, and a person who the officer has probable cause to believe" is engaged in a drug felony.

■     ORS 165.540(5)(a)(B) requires that the conversations occur "between" two identified persons, specifically, between Reineccius and a person whom Eiseland had probable cause to believe was involved in a drug felony. *Webster's Third New Int'l Dictionary*, 209 (unabridged ed 1993), defines the word "between" as "involving the reciprocal action of : involving as participants : jointly engaging * * * : shared by * * *." The term "between," in this context, connotes a communication shared reciprocally by the two identified persons as participants jointly engaged in conversation. *See also* ORS 165.535(1) (defining "conversation" as oral communication "between" two or more persons).

In obtaining defendant's conversations with his mother and the juvenile female by means of a device, the state did not satisfy ORS 165.540(5)(a)(B).[10] Defendant's conversations did not amount to the transmission of an oral communication, ORS 165.535(1), shared reciprocally with

---

[10] The trial court found that, through the body wire, Eiseland was able to overhear "defendant's conversation with his mother in the home; and after defendant and Mr. Reineccius left the home, defendant's conversation with the person from whom he bought marijuana for Mr. Reineccius." The court's latter finding refers to defendant's conversation with the juvenile female.

Reineccius as a participant jointly engaged in conversation. ORS 165.540(5)(a)(B) does not apply to a conversation between a suspected drug felon (here, defendant) and another person that the law enforcement officer or the officer's agent can overhear, by means of a listening device, unless the officer or the agent shares reciprocally in the communication as a participant jointly engaged in conversation. Because the state's action here did not satisfy ORS 165.540(5)(a)(B), the prohibition in ORS 165.540(1)(c) remains applicable to the obtaining of defendant's conversations with his mother and with the juvenile female.

■ The only remaining question is whether the state's violation of ORS 165.540(1)(c) in the foregoing instances amounts to the interception of oral communications within the meaning of ORS 41.910(1)(a). The definitions of "intercept" and "oral communication" provided in ORS 133.721(5) and (7) apply to ORS 41.910(1). Those definitions demonstrate that the state's conduct in obtaining defendant's conversations with his mother and the juvenile female constituted interceptions of oral communications under ORS 41.910(1)(a). Because those interceptions violated ORS 165.540(1)(c), ORS 41.910(1)(a) renders the body wire evidence of those oral communications inadmissible. The trial court's order suppressing that evidence was correct.

### 3. *Defendant's conversations with Reineccius.*

■ We next address the admissibility of the state's body wire evidence of defendant's conversations with Reineccius. The state argues that it complied with ORS 165.540(5)(a)(B) in obtaining those conversations and that no statute obligates the state to secure a court order authorizing use of a body wire if it complies with that statute. Defendant argues that the state must obtain a court order under ORS 133.724 under these circumstances.

The parties' arguments require us to construe ORS 133.724, ORS 133.726, and ORS 165.540(5)(a)(B) together. ORS 133.724(1) authorizes a circuit court judge, upon a proper application, to issue an *ex parte* order that authorizes "the interception of wire, electronic or oral communications * * *." In *State v. Pottle*, 296 Or 274, 284, 677 P2d 1 (1984), this court addressed the lawfulness of an *ex parte* order under ORS 133.724 that authorized police to wiretap telephone

calls. The court gave the following explanation of the function of the *ex parte* order under that statute:

> " 'The order serves the same function as a conventional search warrant by indicating judicial authority for the search, acting as the formal record of judicial action, establishing the limits of the search, instructing the officers on the scope of their authority and discretion, and providing the basis for determining the legality of the execution of the search.' J. Carr, The Law of Electronic Surveillance, § 4.07, 194-95."

*Id.* at 284.

This court determined that, under the legislature's scheme that permits electronic surveillance, the *ex parte* order is the source of authority that allows police to invade the privacy of citizens' telephone communications:

> "The order is the document that allows the police to invade the privacy of all people who use the telephone wire during the authorized period of interception, and limits that invasion."

*Id.* at 288. The court concluded that, because

> "the order authorizing this wiretap did not conform to the statutory requirements, these conversations were intercepted unlawfully, and the conversations and all evidence derived therefrom must be suppressed. ORS 133.735."

*Id.* at 290 (footnote omitted).

*Pottle* involved the wiretapping of telephone calls, not the obtaining by body wire and tape recorder of conversations, as in this case. *Pottle* is significant, however, because, in that case, this court determined that the circuit court's *ex parte* order, issued under ORS 133.724, is the document that authorizes police to invade the privacy of telephone callers to gather evidence of crime.

The *Pottle* court's conclusion regarding police authority to intercept telephone calls pursuant to court order applies with equal force to the interception of oral communications. ORS 133.724 permits the court to authorize the police, through an *ex parte* order, to intercept oral communications of the kind involved here. Defendant's conversations

with Reineccius were "oral communications" within the definition provided in ORS 133.721(7). The state's use of the body wire to obtain those oral communications falls within the definition of "intercept" provided in ORS 133.721(5). The state possessed all the information necessary to demonstrate, in an application for an *ex parte* order under ORS 133.724(1)(c), that

> "there is probable cause to believe that an individual [*i.e.*, defendant] is committing, has committed or is about to commit, * * * a crime punishable as a felony under ORS 475.992 or 475.995 * * *."

Applying *Pottle* in this context, we conclude that ORS 133.724 provides for judicial authorization, through a court order, of exactly the kind of electronic surveillance of oral communications that occurred in this case.

■ ORS 133.724 applies to the interception of *all* oral communications for which the state can make the requisite showing of probable cause. ORS 133.726 also creates a procedure for issuance of a court order approving the obtaining of conversations by police, but confines that procedure to the obtaining of a conversation "under ORS 165.540(5)(a)." ORS 165.540(5)(a) states three circumstances in which "[t]he prohibitions in [ORS 165.540(1)(c)] do not apply * * *." Reading ORS 133.726 and ORS 165.540(5)(a) together, it is clear that a court order under ORS 133.726 relieves the criminal prohibition that otherwise might apply under ORS 165.540(1)(c) to the obtaining of a conversation by police without the consent of all participants. However, ORS 133.726 does not change the scope or applicability of ORS 133.724, and the court order procedure provided in that statute, as the source of police authority to intercept oral communications. Moreover, ORS 133.726 does not purport to authorize the police to obtain a conversation by use of a device without a court order for any purpose.

The state acknowledges, and we agree, that the probable cause provision in ORS 165.540(5)(a)(B) identifies one circumstance that relieves a law enforcement officer of the criminal prohibition in ORS 165.540(1)(c). The state also contends that the court should interpret the probable cause provision in ORS 165.540(5)(a)(B) to create an additional

legal consequence, *i.e.*, to authorize law enforcement officers to obtain conversations without the necessity of securing authorization through a court order issued under ORS 133.724.

We conclude that ORS 165.540(5)(a)(B) does not go as far as the state suggests. ORS 165.540(5)(a) identifies only one legislative objective for the enactment of that subsection: the identification of three factual scenarios in which the criminal prohibition stated in ORS 165.540(1)(c) "do[es] not apply." ORS 165.540(5)(a) does not refer, directly or indirectly, to ORS 133.724. The legislature cited ORS 133.724 in the opening clause of ORS 165.540(1), but that provision establishes only that compliance with ORS 133.724 renders ineffective the criminal prohibitions provided in ORS 165.540(1). Nothing in ORS 165.540 plausibly suggests that, in adopting the exceptions to criminal liability in ORS 165.540(5)(a), the legislature intended in addition to modify the scope or applicability of ORS 133.724 to the interception by law enforcement officers of oral communications by means of a device. The state's argument, if accepted, would eliminate the detailed process for securing a court order authorizing electronic interception of oral communications under ORS 133.724. ORS 165.540(5)(a)(B) contains no wording that supports such a broad exception. This court could create the additional legal consequence for which the state advocates only by adding words to ORS 165.540(5)(a) that the legislature did not include. ORS 174.010 does not permit us to do that. *See Castrejon*, 317 Or at 206 (quoting legislative proscription in ORS 174.010 against inserting words that legislature has omitted).

The state relies for its position in part on *State v. Lissy*, 304 Or 455, 747 P2d 345 (1987). Defendant argues that *Lissy* is distinguishable on its facts and, in any event, was wrongly decided. We agree that *Lissy* is distinguishable.

In *Lissy*, the court separately analyzed the interception by police, without a court order, of telephone conversations with the consent of one party and the obtaining by police of face-to-face conversations with a court order. The court explored the legislative history that applied to the statutes regulating electronic interception of telephone calls.

*Id.* at 463-67. The court concluded that the legislature in 1955 had prohibited the wiretapping of telephone calls, but had excepted from that prohibition the interception of calls either with a court order or with the consent of at least one participant. *Id.* at 464. The court decided that numerous revisions of the pertinent electronic surveillance statutes over the years had left intact the legislature's original 1955 policy choice not to restrict the taping or recording of telephone calls with one party's consent. *Id.* at 466. The court held that the conduct of the police in listening to telephone conversations with one person's consent "was not in violation of state statute." *Id.* at 467. The court also concluded that a federal statute did not impose more stringent requirements for securing a court order to obtain face-to-face conversations than did ORS 133.726 (1983) and, as a result, the police, in obtaining conversations, were not required to comply with ORS 133.724 in order to satisfy the federal statute.[11] *Id.* at 467-68.

The legislature did not enact the probable cause provision in ORS 165.540(5)(a)(B) until 1989, two years after this court decided *Lissy. See* Or Laws 1989, ch 1078, § 1 (amending ORS 165.540(5)(a)(B)). Therefore, *Lissy* did not purport to interpret that statute. The interception that the police carried out without a court order in *Lissy* concerned telephone calls, not face-to-face conversations. The court's analysis in *Lissy* of the unique legislative history of Oregon's laws regulating the interception of telephone calls sheds no light on the necessity under current law of a court order to authorize interception of face-to-face oral communications. The court's resolution of the federal law compliance issue in *Lissy* did not require a discussion of this court's interpretation of ORS 133.724 in *Pottle.* As a result, we decline the state's invitation to extend the rationale of *Lissy* to a subject that that°case did not address, *i.e.,* police authority to intercept face-to-face oral communications without a court order.

We conclude that where, as here, ORS 133.724 permits the court to authorize the police to secure evidence by

---

[11] In rejecting the defendant's argument that the police had not complied with federal law in obtaining conversations, the *Lissy* court determined that ORS 165.540(5)(a) and ORS 133.726 contained "a stricter, not less restrictive, standard" than federal law and concluded that the state's evidence of conversations "was not suppressible *for the reasons argued by defendant.*" 304 Or at 468 (emphasis added).

intercepting oral communications pursuant to an *ex parte* court order, the police must conduct their electronic interception activities pursuant to such an order. No statute entitles the police to elect to employ electronic surveillance to obtain evidence without a court order under circumstances, such as those presented here, in which ORS 133.724 clearly applies.

The state obtained the body wire evidence of defendant's conversations with Reineccius without first obtaining an *ex parte* court order under ORS 133.724. No exception to the requirement that the police obtain an order applied. Thus, the trial court did not err in ordering suppression of the body wire evidence of defendant's conversations with Reineccius. ORS 133.735(1).

The decision of the Court of Appeals is reversed. The order of the circuit court is affirmed, and the case is remanded to the circuit court for further proceedings.