Argued and submitted October 31, 2002, decision of Court of Appeals and judgment
of circuit court affirmed March 6, 2003

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## ANTHONY WAYNE McGINNIS,
*Petitioner on Review.*

## (CC 93CR0202; CA A90256; SC S48767)

64 P3d 1123

Peter Gartlan, Chief Public Defender, Salem, argued the cause for petitioner on review. With him on the brief was David E. Groom, Acting Executive Director.

Tim Sylwester, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.**

DE MUNIZ, J.

** Leeson, J., resigned January 31, 2003, and did not participate in the decision of this case.

## DE MUNIZ, J.

Defendant was charged with selling marijuana to an undercover informant. During the transaction, a police officer recorded the conversation from a remote location. At trial, the jury heard testimony from the state witnesses about the transaction, the recorded conversation, and defendant's testimony about the transaction. The jury convicted defendant of delivery of a controlled substance for consideration, and defendant appealed. The Court of Appeals affirmed, and defendant sought review in this court. This court allowed review and remanded the case to the Court of Appeals so that that court could address whether the recording of the transaction was legally obtained. The Court of Appeals affirmed again, this time holding that the error was harmless, because, "[g]iven defendant's admissions, which established 'delivery for consideration,'" the evidence at issue was "merely cumulative." *State v. McGinnis*, 175 Or App 276, 277, 28 P3d 635 (2001) (footnote omitted). Defendant again sought review in this court. We allowed review and affirm the decision of the Court of Appeals.

The facts of this case involved a police informant's purchase of drugs (a "controlled buy") from defendant. Police informant Diemer acted under the control and direction of a Prineville Police Officer, Calhoun. Diemer arranged a transaction for the sale of marijuana with defendant. During the controlled buy, Diemer wore a listening device known as a body-wire so that Calhoun could listen from a remote location and record the dialog that occurred during the transaction. Diemer and defendant met at defendant's house to conclude the sale. Defendant retrieved some marijuana, weighed it on a scale, and sold one-eighth of an ounce to Diemer for $40. Subsequently, defendant was charged with delivery of a controlled substance.

Before trial, defendant unsuccessfully moved to suppress the body-wire recording. At trial, Diemer testified about the transaction. Calhoun testified about the preparation for the controlled buy and his post-transaction inspection and discussion with Diemer. As part of its case-in-chief,

the prosecution also introduced and played the tape of the transaction that Calhoun had recorded.

Defendant attempted to impeach Diemer's testimony by pointing out, *inter alia,* that Diemer had consumed illegal drugs while acting as a confidential informant and that he had failed to pay taxes on his informant's fees. In addition, defendant took the stand to testify in his own defense. Although defendant conceded that he had engaged in a drug transaction with Diemer, defendant attempted to portray Diemer as the seller. Defendant testified that Diemer had wanted to buy back some marijuana that he previously had sold to defendant and that defendant had complied with Diemer's request.

The jury convicted defendant of unlawful delivery of a controlled substance for consideration in violation of ORS 475.992. The court sentenced defendant to a period of incarceration in the county jail and two years' probation.

On appeal, defendant continued to maintain that the the body-wire recording should have been suppressed. The Court of Appeals affirmed the judgment without written opinion. 151 Or App 137, 953 P2d 432 (1997). While defendant's petition for review was pending, this court decided *State v. Fleetwood,* 331 Or 511, 16 P3d 503 (2000), and its companion case, *State v. Cleveland,* 331 Or 531, 16 P3d 514 (2000), holding that police must obtain an *ex parte* court order under *former* ORS 133.724 before using a body wire and that failure to do so renders the evidence subject to suppression. This court then allowed defendant's petition, vacated the Court of Appeals' decision, and remanded the matter to the Court of Appeals for reconsideration in light of *Fleetwood.*

The Court of Appeals once again affirmed the judgment. 175 Or App at 277. That court held that, because defendant had testified that he had engaged in an illegal drug transaction, the body-wire evidence was cumulative, rendering the error, if any, harmless. *Id.*

On review, defendant contends that the Court of Appeals erred in relying on his testimony to conclude that he had not been harmed by the erroneously admitted body-wire

recording.[1] In support of that assertion, defendant offers two arguments. First, defendant argues that the nonwaiver rule that this court applies in civil cases—that a party may counter its opponent's evidence, whether correctly admitted or not, without waiving its evidentiary objection on appeal—is not, but similarly should be applied by this court in criminal cases. Second, defendant argues that this court should adopt a rule that precludes consideration of a defendant's trial testimony in a harmless error review when the defendant's testimony was compelled to rebut illegally admitted evidence. We examine each of defendant's arguments in detail, beginning with the so-called nonwaiver rule.

■■ This court first discussed the nonwaiver rule almost 80 years ago in *Wallace v. American Life Ins. Co.*, 111 Or 510, 225 P 192 (1924). In *Wallace*, the plaintiff argued that the defendant had waived its objection to the admission of expert "opinion evidence" offered by the plaintiff because the defendant had cross-examined the plaintiff's witnesses regarding that evidence and had offered expert "opinion evidence" of its own in response. This court concluded that the party objecting to evidence may, once the evidence is admitted over the party's objection, attack that evidence without waving an objection to its admissibility:

> " 'A party does not waive his objection and exception to the admission of incompetent evidence by attempting to disprove the matters testified to or to prove facts inconsistent with them. A party excepting to the admission of testimony is not bound to concede its truth, or to refrain from combating it in order to retain his exception.' Baylie's Trial Practice (2 ed.), p. 292."

*Id.* at 536.

Recently, in *McCathern v. Toyota Motor Corp.*, 332 Or 59, 23 P3d 320 (2001), this court addressed a question similar to that addressed in *Wallace*, namely, whether a

---

[1] We emphasize at the outset that the body-wire evidence was suppressed on statutory grounds only. We note that, after defendant's conviction, the 1997 legislature enacted ORS 136.432, which limits the ability of courts to suppress evidence obtained in violation of a statute. Neither party argues that ORS 136.432 has any bearing on our decision in this case, and we make no decision regarding the effect of that statute, if any, on ORS 133.735, which allows suppression of illegally obtained body-wire evidence. *See Fleetwood*, 331 Or at 530 (applying ORS 133.735).

party waived an objection to the admission of expert evidence for purposes of appellate review by attempting to rebut that evidence. This court rejected the argument, holding that "[a] party has the right to meet its opponent's evidence admitted under the trial court's rulings. After making the proper objections, a party may counter its opponent's evidence, whether correctly admitted or not, without waving its evidentiary objection on appeal." *Id.* at 70.

According to defendant, this court's nonwaiver rule, as explained in *Wallace* and *McCathern*, is not similarly applied in criminal cases. In support of that assertion, defendant cites a number of cases, spanning over 100 years of this court's criminal jurisprudence, which he contends hold "that a criminal defendant who introduces evidence similar to the objectionable evidence foregoes or 'waives' the right to challenge the initial ruling on appeal." We now examine the cases upon which defendant relies to support that contention.

In *State v. Hatcher*, 29 Or 309, 44 P 584 (1896), the defendant argued that the trial court had erred in admitting a written statement that the defendant had made in a preliminary hearing. The court agreed that the statement should not have been admitted because the defendant had not been advised that his failure to make a written statement at the preliminary hearing could not be used against him. Nevertheless, the court reasoned that

> "the defendant could not have been prejudiced by the admission of the statement complained of, for he testified to the same state of facts on the trial, and was corroborated by witnesses for the state with whom he had conversed concerning the matter. There being no dispute about the facts detailed in the statement, the error was harmless and could not have injured the defendant."

*Id.* at 313.

In *State v. Unsworth*, 240 Or 453, 402 P2d 507 (1965), the defendant was convicted of second-degree murder. On appeal, the defendant argued that a statement that he had made in response to an interrogation by an assistant district attorney should not have been admitted in evidence. The court held that the defendant had waived his right to object to the statement on appeal because

"[d]efendant was represented by counsel, and when he took the witness stand and repeated in substance the same admissions contained in his statement, he waived any right to object to the admission of the statement on the ground that he was not advised before the statement was given of his right to counsel or of his right to remain silent. *State v. Dotson*, 239 Or 140, 396 P2d 777 (1964). Under the circumstances of this case it is not necessary to consider the adequacy of the warning which was given defendant before he was interrogated."

*Id.* at 460.

Similarly, in *State v. Frazier*, 245 Or 4, 418 P2d 841 (1966), the defendant argued on appeal that his pretrial confession had been obtained illegally and should not have been admitted. The court refused to consider the merits of the defendant's argument, holding that

"it is unnecessary to consider the effectiveness of the police warning since the defendant could hardly claim prejudicial error in the face of the record. The defendant was ably represented by counsel. He took the witness stand and stated that the statements in his written confession were all true except as to one minor detail. He thus waived the constitutional right he is now claiming."

*Id.* at 9.

More recently, in *State ex rel Juv. Dept. v. Cook*, 325 Or 1, 932 P2d 547 (1997), the child had made statements to police, some voluntary and some arguably coerced, that implicated him in a murder. He then sought to suppress all his statements, but the trial court suppressed them only in part. At an adjudicatory hearing, a number of witnesses offered evidence that was unfavorable to the child. 325 Or at 4. Perhaps in response to the "considerable evidence" against him, the child took the stand and testified. In his testimony, the child made several statements that were just as incriminating as the statements that he unsuccessfully had sought to suppress. This court concluded:

"Child's choice to testify at the hearing about the substance of the statements that he previously had sought to have suppressed defeats his argument. Whatever label is used—unpreserved error, harmless error, or waiver—

child's own testimony in this case eliminated the possibility that the court's earlier ruling on the motion to suppress harmed him. *See, e.g., State v. Walton,* 311 Or 223, 231, 809 P2d 81 (1991) (defendant could not successfully claim reversible error in certain statements, because same information was contained in other statements whose admissibility defendant did not challenge)."

*Id.* at 5.

Defendant reads *Cook* and the cases preceding it, as waiver cases and, in so doing, argues that *Cook* should be overruled in favor of the nonwaiver rule stated in *McCathern*. We do not read *Cook* as narrowly as does defendant. As *Cook* points out, perhaps imprecisely, the appellate review question is whether, in light of the defendant's trial testimony, *the defendant was harmed by the challenged statements.*

Admittedly, this court has used different words in criminal cases throughout the years to conclude that, as a result of a defendant's testimony at trial, the defendant could not have been harmed by the challenged evidence. The difference, though perhaps unspoken, underlying the rule applied in *McCathern* and the rule applied in criminal cases such as *Cook*, is found in the basic difference between criminal and civil cases and the nature of the evidence that is offered in response to the challenged evidence.

In criminal cases, the state must prove its case beyond a reasonable doubt, but may not compel a defendant's testimony at trial to establish its case. Our system of criminal justice affords a criminal defendant a variety of ways to counter challenged evidence (such as pretrial statements) without testifying in court about the challenged evidence. When a defendant testifies, however, and admits the substance or truthfulness of the matters contained in the erroneously admitted evidence, the facts established by the in-court admissions may eliminate any harm associated with the erroneously admitted evidence. That is the rule initiated in *Hatcher* and followed in *Cook*.

The situation is different in civil cases, such as *McCathern* and *Wallace*. In those cases, the party challenging the evidence generally does not concede the "truthfulness" of the challenged evidence, but offers evidence to rebut or discredit the challenged evidence.

■■     To eliminate any confusion that may exist from the wording used in *Cook* and the cases that preceded it, we now hold that the nonwaiver rule, as applied in *McCathern*, similarly shall be applied in criminal cases. Furthermore, *Cook* should not be read to hold that a criminal defendant who testifies at trial waives automatically the right to challenge the admission of any properly challenged pretrial statements. The question that remains in those cases is whether, in light of the defendant's testimony, the challenged statements harmed the defendant.

■     Next, defendant urges that we adopt a rule providing that, when a criminal defendant testifies at trial in response to evidence that the state erroneously has introduced, the defendant's testimony cannot be used in a harmless error review, unless the state can show that the defendant would have testified regardless of the trial court's alleged error in admitting the state's evidence. In support of that proposed rule, defendant relies on *Harrison v. United States*, 392 US 219, 88 S Ct 2008, 20 L Ed 2d 1047 (1968). However, defendant seeks more from the Supreme Court's holding in *Harrison* than it can provide.

*Harrison* concerned the retrial of a defendant on the charge of felony murder. At the defendant's first trial, the trial court had admitted, during the prosecution's case-in-chief, three confessions that the appellate court subsequently determined had been obtained illegally. On retrial, the prosecution did not offer the illegally obtained confessions, but instead, offered the defendant's previous testimony. The trial court admitted that testimony over the defendant's objection and the jury again convicted the defendant.

On appeal, the defendant argued that his previous testimony should have been suppressed because it was "the inadmissible fruit of the illegally procured confessions." *Id.* at 221. The Supreme Court agreed and reversed the defendant's conviction. Quoting from an opinion written by Justice Tobriner of the California Supreme Court, the Court stated that, " '[i]f the improper use of [a] defendant's extrajudicial confession impelled his testimonial admission of guilt, * * * we could not, in order to shield the resulting conviction from reversal, separate what he told the jury on the witness stand

from what he confessed to the police during the interrogation.'" *Id.* at 223-24, *quoting People v. Spencer*, 66 Cal 2d 158, 164, 424 P2d 715 (1967).

■      As the foregoing summary demonstrates, the "poisonous tree" at issue in *Harrison* was the improper use of the defendant's illegally obtained confessions. In our view, therefore, the rule of *Harrison* concerns the consequences of using a defendant's compelled statements at trial, not the consequences of using any other illegally obtained evidence. Because compelled statements implicate a defendant's *testimonial* rights, it follows logically that the taint from the admission of those statements affects that defendant's in-court testimony. Thus, suppression of the former requires suppression of the latter, absent the requisite showing by the prosecution.[2]

We acknowledge that the foregoing interpretation of *Harrison* is not required by any explicit statement by the Supreme Court in that case. However, the question whether that interpretation is correct was laid to rest by the United States Supreme Court's decision in *Oregon v. Elstad*, 470 US 298, 105 S Ct 1285, 84 L Ed 2d 222 (1985). In *Elstad*, the defendant argued that statements that the police had obtained in violation of the requirements of *Miranda v. Arizona*, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966), "tainted" the statements that he had made after he had been fully advised of, and had waived, his *Miranda* rights. The Court rejected the defendant's argument that the rule of *Harrison* required the suppression of the statements that he had made after the appropriate *Miranda* waiver. It explained:

> "This Court has never embraced the theory that a defendant's ignorance of the full consequences of his decisions vitiates their voluntariness. If the prosecution has actually violated the defendant's Fifth Amendment rights by introducing an inadmissible confession at trial, compelling the defendant to testify in rebuttal, the rule announced in

---

[2] *Harrison* places the burden on the prosecution to show that its use of the defendant's unlawfully obtained confession did not induce the defendant's testimony. 392 US at 225.

*Harrison v. United States* precludes the use of that testimony on retrial. * * * But the Court has refused to find that a defendant who confesses, after being falsely told that his codefendant has turned State's evidence, does so involuntarily. * * * The Court has also rejected the argument that a defendant's ignorance that a prior coerced confession could not be admitted in evidence compromised the voluntariness of his guilty plea. Likewise, in *California v. Beheler,* * * * the Court declined to accept defendant's contention that, because he was unaware of the potential adverse consequences of statements he made to the police, his participation in the interview was involuntary. Thus we have not held that the *sine qua non* for a knowing and voluntary waiver of the right to remain silent is a full and complete appreciation of all the consequences flowing from the nature and quality of the evidence in the case."

470 US at 316-17 (citations omitted). Thus, *Elstad* makes clear that the rule of *Harrison* is limited to those circumstances in which a defendant is compelled to testify at trial as a result of the Fifth Amendment violation that occurs when an illegally obtained confession is used against that defendant at trial. Stated otherwise, a defendant cannot invoke the protection of the *Harrison* rule unless the evidence that the defendant sought to rebut by taking the stand was an inadmissible *confession*, not evidence of some other kind, even if that evidence was obtained illegally.

■        Turning to the case before us, even if we assume, *arguendo*, that defendant was compelled to testify in his own behalf because the trial court admitted body-wire evidence that had been obtained in violation of ORS 133.724, those statements were not analogous to an illegal confession. The statements were not the product of compulsion by law enforcement, even if they were captured in violation of a statute. Defendant made those statements voluntarily. For that reason, defendant's reliance on *Harrison* is misplaced.

        That said, the United States Supreme Court's rule in *Harrison* does not preclude this court from fashioning a different rule under Oregon constitutional or statutory law. However, we are persuaded by the logic of that Court's rule. Because the statements at issue here were not compelled in

any way, their admission into evidence did not vitiate the voluntariness of defendant's subsequent decision to testify in his own behalf. Fully aware of the advantages and disadvantages of testifying, defendant chose to take the stand and to meet the state's evidence. Under such circumstances, there is no reason to exclude defendant's testimony from a review of the record for harmless error.

Finally, defendant argues that, even if his trial testimony is considered in a review of the record, the error in admitting the body-wire recording was not harmless. We disagree for the reasons that the Court of Appeals expressed in its decision.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.