Argued and submitted May 26, conviction for possession of a controlled substance reversed and remanded; otherwise affirmed December 8, 2004

STATE OF OREGON,
*Respondent,*

*v.*

CHRISTOPHER LEE JONES,
*Appellant.*

01C44488, 01C45713;
A117784 (Control), A117785
(Cases Consolidated)

103 P3d 108

Jennelle Meeks Barton, Deputy Defender, argued the cause for appellant. With her on the brief was Peter A. Ozanne, Acting Executive Director, Office of Public Defense Services.

Ryan Kahn, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

ARMSTRONG, J.

**ARMSTRONG, J.**

Defendant appeals his convictions for possession of a Schedule II controlled substance, ORS 475.992(4)(b), and for first-degree failure to appear, ORS 162.205. He assigns error to several of the trial court's evidentiary rulings. We reverse and remand defendant's conviction for possession of a controlled substance and otherwise affirm.

On May 23, 2000, Officer Johnson went to defendant's home because he had been told that another officer had recently seized a marijuana plant there. At the time, defendant was renting a room from his mother. As Johnson came up to the house, he saw defendant sitting in his van. Johnson walked up to the van, introduced himself, and asked defendant if he knew why Johnson was there. Defendant replied, "Yeah, I heard from a friend that a cop seized a marijuana plant from my house here the other day, but it wasn't my plant; a friend of mine brought it over and left it here." Johnson responded by asking defendant whether he used any controlled substances. Defendant replied, "Well, I'm not going to lie to you, I do smoke marijuana every now and again." Johnson then asked defendant for consent to search his home. Defendant said that Johnson could search his room and led him to it.[1]

As Johnson and defendant walked to defendant's room, Johnson asked defendant "Well, is there anything in your room that's going to get you in trouble?" Defendant said that there was not, aside from a few marijuana pipes. Johnson then asked "Are you sure there's nothing in there that's going to get you in trouble, no one else?" Defendant replied that his girlfriend, Cedarleaf, was in the room.

Johnson entered the room and told Cedarleaf that he and another officer were there to search it. Johnson saw Cedarleaf make several furtive movements, so he asked her to step outside. Cedarleaf complied with Johnson's request. Johnson then asked Cedarleaf whether she had any possessions in the room, and, if so, whether Johnson could search

---

[1] Defendant does not challenge on appeal the validity of his consent to the search.

them. Cedarleaf responded that she did have possessions in the room and did not care if Johnson searched them.

Johnson proceeded to search the room. He first discovered a bag of unused syringes. He asked defendant and Cedarleaf whether the syringes belonged to them. Both denied seeing the syringes before, and defendant claimed that a friend must have left them in his room. Johnson then found a plastic container that contained a marijuana pipe, "glass smoking tubes [containing] white residue," syringes, a straw, and "sandwich baggies that had some white powder residue in [them]." The substance in both the smoking tubes and the baggies was later determined to be methamphetamine. When asked whether the items belonged to him, defendant replied that the marijuana pipe was his but that the other items were not. Cedarleaf denied that any of the items were hers. Johnson then looked in a small case and discovered a syringe half-full of a brownish liquid. Laboratory tests later revealed that the liquid was a mixture of Cedarleaf's blood and methamphetamine. When asked, Cedarleaf admitted that the partly filled syringe was hers. Cedarleaf and defendant were both arrested. Cederleaf later pleaded guilty to a charge of delivery of a Schedule II controlled substance, specifically methamphetamine. That charge was based on evidence that the police discovered in defendant's room.

Defendant was charged with possession of a controlled substance and delivery of a controlled substance. On May 23, 2000, defendant signed a release agreement. The agreement provided that he was to appear in court on June 6, 2000. Defendant appeared on June 6 and was ordered to appear again on July 6. Defendant did not appear on July 6. A warrant was issued for his arrest, and he was arrested on the warrant on July 27.

Before trial, defendant filed a motion *in limine* seeking admission at trial of the indictment against Cedarleaf, her plea petition, and the judgment convicting her of the charged crime. Defendant also asked the court to exclude under OEC 404(3) evidence about the seized marijuana plant or references to it and to exclude as hearsay Johnson's testimony about what the other officer had told him about the marijuana plant. The state objected to the admission of

Cedarleaf's indictment, plea, and conviction, arguing that the evidence was not relevant to the drug charges against defendant because defendant and Cedarleaf could have jointly possessed the methamphetamine. The court agreed with the state and denied defendant's motion to admit the evidence. The court delayed its ruling on defendant's OEC 404(3) and hearsay objections but ultimately overruled them, after which Johnson testified about the marijuana plant and what the other officer had told him about it.

Defendant also testified at trial. In response to a question from his counsel about why he cooperated with the police, defendant said:

"Well, I really didn't have much to hide. I mean I—he came and he asked me—he wanted to know if he could come search because of the marijuana plant that was seized—it was actually more than two days before, but the officers left a receipt, and me and [Cedarleaf] were over at my oldest boy's house, which [sic] lives across town. As soon as I got there, back to the house that night, my mom told me they left a receipt for the marijuana plant and everything.

"I was outside in the driveway working on my van * * * and a friend of mine, Chris, was sitting in the passenger seat, and he nudged me, he says, 'Hey, man, you've got a bunch of cops out here wanting to talk to you, man.'

"The officer pulled me out of the vehicle, and we were in the neighbor's yard, and he asked me—told me exactly why he was there. He was there because they had problems with the officers that were there before, with the marijuana plant."

A jury convicted defendant of possession of a controlled substance and failure to appear. The jury acquitted him of the charge of delivery of a controlled substance.

Defendant appeals from his convictions, assigning error to the trial court's evidentiary rulings. Defendant first argues that evidence of Cedarleaf's indictment, plea, and conviction were relevant because the evidence supported an inference that the drugs were Cedarleaf's and not his. He also contends that exclusion of that evidence was not harmless. Although defendant was able to introduce evidence that Cedarleaf claimed ownership of the syringe that contained

her blood, he was prevented from showing that Cedarleaf was convicted of a crime based on the evidence discovered in his room.

The state responds that the disputed evidence is not relevant because two people can jointly possess the same controlled substance. *State v. Anaya,* 111 Or App 204, 207, 826 P2d 27 (1992). The state reasons that "the fact that Cedarleaf may have possessed all of the controlled substances in defendant's residence * * * would not make it less likely that defendant *also* possessed them." In the alternative, the state argues that it would have been proper for the trial court to exclude the evidence as unduly prejudicial under OEC 403. Finally, the state argues that any error was harmless because the evidence was cumulative and did not establish that Cedarleaf possessed more than the syringe.

■■ We review a trial court's relevance determinations for legal error. As the court explained in *State v. Titus,* 328 Or 475, 480-81, 982 P2d 1133 (1999):

"OEC 401 defines relevant evidence as evidence that has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' The rule establishes a 'very low threshold' for the admission of evidence. *State v. Hampton,* 317 Or 251, 255 n 8, 855 P2d 621 (1993). Evidence is relevant so long as the inference desired by the proponent is reasonable, even if the evidence also could support a contradictory inference."

■ Contrary to the state's argument, the disputed evidence is relevant. Two or more people can jointly possess a controlled substance. However, the fact that one person has pleaded guilty to a charge based on the same drugs that a defendant is charged with possessing also supports an inference that the drugs belonged only to the person who pleaded guilty and not to the defendant. The trial court therefore erred in ruling that Cedarleaf's indictment, plea, and judgment were not relevant.

We turn to the state's argument that it would have been proper for the trial court to exclude the evidence under OEC 403. The trial court did not rule on whether the evidence should have been excluded under OEC 403. Because it

did not, we cannot consider whether it would have been proper for the trial court to exclude the evidence on that basis. *State v. Davis*, 336 Or 19, 27, 77 P3d 1111 (2003) ("We will not speculate about how the trial court could have exercised its discretion under OEC 403 if it had chosen to do so.").

We turn to whether the error requires us to reverse defendant's conviction for possession of a controlled substance.

"Oregon's constitutional test for affirmance despite error consists of a single inquiry: Is there little likelihood that the particular error affected the verdict? The correct focus of the inquiry regarding affirmance despite error is on the possible influence of the error on the verdict rendered, not whether this court, sitting as a factfinder, would regard the evidence of guilt as substantial and compelling."

*Id.* Cedarleaf's indictment, plea, and conviction do not identify the items in defendant's room that form the basis for the drug delivery charge against Cedarleaf. Consequently, a factfinder could infer that Cedarleaf's conviction was based on all of the methamphetamine evidence in the room. In light of that inference, the evidence could have affected the verdict against defendant. Therefore, the error in excluding the evidence was not harmless. It follows that defendant's conviction for possession of a controlled substance must be reversed.

We address defendant's second and third assignments of error because those assignments, if meritorious, could require reversal of defendant's conviction for failure to appear. Defendant argues that evidence of the marijuana plant and the hearsay statements about the plant should have been excluded by the trial court under OEC 404(3) and OEC 802. He contends that, because that evidence was presented to the jury, the jury may have found him guilty based on evidence that he had a bad character. We need not decide if the trial court erred in admitting the evidence because the error, if any, was harmless.

Again, error is harmless if there is little likelihood that it affected the verdict. *Davis*, 336 Or at 32. Although defendant objected to the admission of evidence about the

marijuana plant, he later testified about the plant. His testimony includes the same facts that he contends should have been excluded. Defendant's testimony properly is considered in assessing whether the admission of the disputed evidence was harmless. *See State v. McGinnis*, 335 Or 243, 254, 64 P3d 1123 (2003) ("Fully aware of the advantages and disadvantages of testifying, defendant chose to take the stand and to meet the state's evidence. Under such circumstances, there is no reason to exclude defendant's testimony from a review of the record for harmless error."). Because defendant testified about the marijuana plant, the evidence about the plant that he sought to exclude is cumulative, and any error in admitting it was harmless.

Conviction for possession of a controlled substance reversed and remanded; otherwise affirmed.