Argued and submitted September 1, 2005, affirmed January 4, 2006

## STATE OF OREGON,
*Respondent,*

*v.*

## DOROTHY CAROL DAVIS,
*Appellant.*

D03040 62M; A124233

125 P3d 1276

Garrett A. Richardson argued the cause and filed the brief for appellant.

Robert M. Atkinson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

SCHUMAN, J.

## SCHUMAN, J.

In this criminal case, defendant appeals her conviction for animal neglect in the second degree, ORS 167.325, assigning error to the trial court's denial of her motion to suppress evidence obtained as the result of a warrantless entry into her house by the investigating officer. The state concedes that the evidence should have been suppressed but argues that admitting it was harmless error. We agree and affirm.

Klages, an Oregon State Police officer, was ordering coffee in a shop in Forest Grove when she was approached by a woman named Arnett who, along with her husband, had been house hunting in the area. Arnett told Klages that she had seen an unoccupied house with a "For Sale" sign in front, at 549 19th Court in Cornelius, and that, peering into the house, she had seen a cat and a rabbit living in extremely unsanitary conditions. According to Arnett (as later recounted by Klages at the hearing on defendant's motion to suppress), there were cat and rabbit feces throughout the house and no evidence of food and water. Arnett asked Klages to investigate.

Klages drove to the house, where she saw a phone number on the "For Sale" sign along with the name of the realtor. Klages called the realtor and asked for permission to enter the house. He complied. Inside, she saw no animals, but she did see feces and neither food nor water. She returned the next day and saw the cat that defendant was accused of neglecting. From neighbors and from running a check on the license plate of a truck parked in front of the house, Klages determined that defendant was the owner of the house. An arrest ensued.

■ Defendant moved for suppression of the evidence obtained from Klages's warrantless search of the house. The court, however, concluded that Klages entered the house with the consent of the realtor and that the realtor had authority to grant that consent. It therefore denied defendant's motion to suppress. Defendant waived a jury trial and subsequently testified in her own defense. The trial court found her guilty. Defendant appeals, arguing that the court

erred in concluding that the realtor had authority to consent to the search of defendant's house.

On appeal, the state does not contend that the agent had such authority; rather, it "acknowledges that the record contains no evidence that the realtor had actual authority to admit someone to the house who was not entering for the purpose of possibly purchasing it." We take that statement as an abandonment of the consent argument and we accept it as such. Instead, the state argues that any error in admitting the evidence obtained from Klages's warrantless entry was harmless and therefore that we must affirm. Or Const, Art VII (Amended), § 3. We agree.

Error is harmless if "there is little likelihood that the error affected the verdict." *State v. Gibson*, 338 Or 560, 576, 113 P3d 423 (2005). In gauging whether erroneously denying a motion to suppress is harmless, we may consider the fact that the defendant himself or herself subsequently testified to the very facts that should properly have been suppressed, thereby eliminating any prejudice that their original, unlawful admission might have caused. *State v. McGinnis*, 335 Or 243, 251-54, 64 P3d 1123 (2003); *State ex rel Juv. Dept. v. Cook*, 325 Or 1, 5, 932 P2d 547 (1997); *State v. Lopez*, 147 Or App 314, 316, 936 P2d 386, *rev den*, 326 Or 58 (1997) ("[A] defendant who chooses to take the stand and testify about certain facts cannot be heard to complain about the trial court's failure to grant a pretrial motion to suppress evidence of the same facts.").

In the present case, defendant's testimony supplies the facts upon which the trial court correctly determined defendant's guilt.

Defendant was convicted of violating ORS 167.325(1). That statute provides:

> "A person commits the crime of animal neglect in the second degree if, except as otherwise authorized by law, the person intentionally, knowingly, recklessly or with criminal negligence fails to provide minimum care for an animal in such person's custody or control."

"Minimum care," in turn, is defined by ORS 167.310(6):

> " 'Minimum care' means care sufficient to preserve the health and well-being of an animal and, except for emergencies or circumstances beyond the reasonable control of the owner, includes, but is not limited to, the following requirements:

> "(a)   Food of sufficient quantity and quality to allow for normal growth or maintenance of body weight.

> "(b)   Open or adequate access to potable water in sufficient quantity to satisfy the animal's needs. * * *

> "* * * * *

> "(e)   For a domestic animal, continuous access to an area:

> "* * * * *

> "(C)   Kept reasonably clean and free from excess waste or other contaminants that could affect the animal's health."

Not including any evidence derived from Klages's search of defendant's house, the following evidence was admitted without objection. Defendant testified that she owned the cat but had not been to her house for more than a month before speaking to Klages. Rather, the house had been rented to her son, her granddaughter, and her granddaughter's boyfriend. The granddaughter and her boyfriend had moved out approximately two weeks before Klages's first visit, leaving only the son, whom defendant described as "a druggy" who had been "cooking" drugs. Defendant also testified that she had told her granddaughter that the house was a "mess" with dog feces in it. No contrary evidence was offered.

We conclude that the lawfully admitted evidence is more than sufficient to establish animal neglect in the second degree beyond a reasonable doubt. Further, we need not speculate as to whether the unlawfully admitted evidence affected the outcome. The case was tried to the court, and the court explained that, even giving defendant the benefit of the doubt, it was "very clear" that defendant left the cat with "ne'er-do-wells" who were "not taking care of the cat." The

court also noted that, "by her own testimony, [defendant] saw feces and the like and she just didn't—she was always in charge of that cat and she just didn't take proper care of it[.]" In other words, based on lawfully admitted evidence, the court found that defendant delegated care of her cat to people who were unwilling or unable to care for it, with the result that the cat had to live in an area that was not free from excess waste. The unlawfully admitted evidence was harmlessly cumulative.

Affirmed.