Argued and submitted May 7, at Portland State University, Portland, Oregon, in *State v. Moore*, S057820, decision of Court of Appeals affirmed; judgment of circuit court reversed, and case remanded to circuit court for further proceedings;* in *State v. Coen*, S058145/S058152, decision of Court of Appeals affirmed; judgment of circuit court affirmed in part and reversed in part, and case remanded to circuit court for further proceedings** December 16, 2010

STATE OF OREGON,
*Petitioner on Review,*

*v.*

DOUGLAS CARL MOORE,
aka Dc Moore, aka Douglas Earl Moore,
*Respondent on Review.*

(CC CF050356; CA A134343; SC S057820)

STATE OF OREGON,
*Petitioner on Review,*

*v.*

EDWIN SHANE COEN,
*Respondent on Review.*

(CC 020774FE; CA A135115; SC S058145, S058152)

(Consolidated for argument and opinion)

245 P3d 101

Matthew J. Lysne, Assistant Attorney General, Salem, argued the cause for petitioner on review in both cases. With him on the briefs were John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, David B. Thompson, and Linda M. Wicks, Assistant Attorneys General.

Susan F. Drake, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause for respondent on review Douglas Carl Moore. With her on the brief was Peter Gartlan, Chief Defender.

Jesse Wm. Barton, Salem, argued the cause and filed the brief for respondent on review Edwin Shane Coen.

DE MUNIZ, C. J.

## DE MUNIZ, C. J.

In these two criminal cases, consolidated for purposes of opinion, each defendant testified at his trial after the trial court had erroneously admitted incriminating statements that police officers had obtained from each defendant in violation of Article I, section 12, of the Oregon Constitution.[1] In *State v. Moore*, 229 Or App 255, 211 P3d 344 (2009), the Court of Appeals concluded that it could not consider defendant's trial testimony in determining whether the admission of defendant's unlawfully obtained statement was "harmless error." In *State v. Coen*, 231 Or App 280, 220 P3d 423 (2009) (*Coen II*), the Court of Appeals, citing *Moore*, concluded that the state could not introduce defendant's prior trial testimony during his retrial. We allowed the state's petitions for review. For the reasons that follow, we affirm the decisions of the Court of Appeals in both *Moore* and *Coen II*. Both cases are remanded to the trial court for further proceedings.

## I. FACTS AND PROCEDURAL BACKGROUND

### A. *State v. Moore*

In *Moore*, a state trooper had observed that defendant was not wearing a seatbelt while driving this truck and stopped him. During the stop, the trooper noticed ammunition on the dashboard and asked defendant if there were any firearms in the truck. When defendant responded affirmatively, the trooper asked, "What do you have?" Defendant replied, "Just my friend's gun in the back there." The trooper then asked if it was a pistol or a rifle, and defendant replied that it was a .22 rifle. When the trooper later asked defendant for the rifle, defendant retrieved the weapon from behind the front seat, and also showed the trooper a piece of a disassembled rifle. Upon checking defendant's driving record and criminal history, the trooper discovered that defendant had a felony conviction. The trooper then handcuffed defendant and locked him in the back of the patrol car. The trooper informed defendant that he was being detained but was not under arrest. Shortly afterward, while standing in

---

[1] The relevant text of Article I, section 12, is set out below.

the open doorway of the patrol car, the trooper questioned defendant about the rifle. Defendant stated that the rifle belonged to a friend with whom he had been hunting, and that the friend had left the rifle in the truck for safekeeping. Defendant also stated that he knew he was not supposed to have a gun and was going to take the rifle out of the truck, but had forgotten to do so. Defendant subsequently was charged with one count of felon in possession of a firearm, ORS 166.270.

Before trial, defendant moved to suppress the statements that he had made while in the patrol car, arguing that he had either been under arrest or in compelling circumstances when he made them, and therefore the trooper should have advised him of his *Miranda* rights before questioning him. The trial court denied defendant's motion. At trial, defendant explained that his initial response to the trooper was a reference to the disassembled rifle piece, and that he did not know that his friend had left the functional rifle in the truck until he had turned to retrieve the piece of the disassembled rifle. In closing arguments, the prosecutor asserted that defendant's explanation at trial was undermined by the statements that he had made while sitting in the patrol car. Ultimately, a jury convicted defendant on one count of felon in possession of a firearm.

Defendant appealed, assigning error to the trial court's denial of his motion to suppress and argued that he should have been advised of his *Miranda* rights before being questioned. The state responded that *Miranda* warnings were not required under those circumstances and, alternatively, that any error was harmless. The Court of Appeals concluded that the trial court should have suppressed the statements that defendant had made in the patrol car because defendant had been under "compelling circumstances," when the officer questioned him, requiring the officer to give defendant *Miranda*-like warnings before questioning. *Moore*, 229 Or App at 262. In reversing and remanding for a new trial, the Court of Appeals concluded (1) that, under *State v. McGinnis*, 335 Or 243, 64 P3d 1123 (2003), it could not consider defendant's trial testimony to determine

whether the admission of defendant's statements was harmless error, and (2) that the erroneous admission of defendant's pretrial statements had not been harmless error. *Id.* at 264-65.

We allowed the state's petition for review. On review, the state does not dispute that defendant's pretrial statements were obtained in violation of Article I, section 12. Rather, the state argues that, under *McGinnis,* (1) excluding a defendant's trial testimony from harmless error review is appropriate only when a defendant's erroneously admitted pretrial statement were "actually coerced," and (2) an appellate court *must* consider a defendant's trial testimony when the state proves that erroneously admitted statements did not compel defendant's trial testimony. Here, the state asserts that defendant voluntarily made the erroneously admitted statements; that is, they were not "actually coerced." In addition, the state argues that the erroneous admission of defendant's pretrial statements did not compel defendant to testify at trial because, notwithstanding those statements, defendant nevertheless needed to testify at trial to explain other statements that he had made to the trooper and that the trial court had properly admitted. The state also requests that this court reexamine *McGinnis* and hold that, when a defendant testifies voluntarily and admits the truthfulness of statements that the trial court erroneously admitted at trial, the defendant's trial testimony may always be used for harmless error review or for rebuttal on retrial.

## B.   *State v. Coen (Coen II)*

In *Coen*, defendant was charged with second-degree manslaughter and driving under the influence of intoxicants (DUII) after a head-on automobile collision in which the driver of one vehicle was killed and defendant, the driver of the other vehicle, was hospitalized. At the accident scene, the responding officer, Trooper Allison, noticed a "half rack" of beer on the passenger side of defendant's vehicle and another box of beer in the back seat. Allison went to the hospital to question defendant. When he arrived, he spoke with a doctor who stated that, in his opinion, defendant was intoxicated. Allison entered defendant's hospital room and noticed that defendant's eyes were bloodshot, watery, and droopy, and

that his speech was slow. Without first giving defendant *Miranda* warnings, Allison began to question him. Defendant stated that he had had two or three beers a few hours before the accident, but maintained that he was in his lane when the accident occurred. Allison asked defendant if he would give blood and urine samples. Defendant responded, "If I had a couple beers and this is turning into a big deal, I think that I should probably have an attorney, shouldn't I?" Allison told defendant that he could call an attorney, but that if defendant did so, he would be arrested. Allison explained, "[T]here's actually two ways this is going to work, is, you can give it by consent, or I can place you under arrest and then I get it anyway." Defendant then asked, "If I had a lawyer here, I'd be under arrest now?" Allison responded affirmatively. Defendant did not call a lawyer and agreed to provide the samples.

As the samples were being drawn, Allison continued to question defendant. During that conversation, defendant appeared to retreat from his earlier statement that he had remained in his own lane, admitting that, "[The other driver] was on that corner, I tapered the corner, and then 'bam!' " A chemical analysis of defendant's blood and urine revealed a blood alcohol content of .25 percent.

Before trial, defendant moved to suppress (1) the statements that he had made to Allison at the hospital and (2) the results of his blood and urine tests. The trial court denied the motion. Defendant then testified at trial, admitting that he was an alcoholic and that he had been drinking before the accident. Specifically, defendant testified that he had consumed 15 or 16 beers in the eight hours before the collision, but that that was a "normal day." He testified that he had a high tolerance for alcohol and was not under the influence of intoxicants at the time of the collision. Defendant further testified that he had been in his lane and had not caused the collision, stating that when he had told Allison that he had "tapered the corner," he meant that he "[took] it low into the corner," to reduce the outward pull on the truck, but remained inside his lane. A jury convicted defendant on both counts, and he appealed.

On appeal, the Court of Appeals concluded that, when Allison told defendant that he would arrest him if he insisted on contacting a lawyer, the circumstances became compelling, and that Allison should have given defendant *Miranda* warnings. The Court of Appeals also determined that defendant's consent to give the blood and urine samples was the product of an illegal threat by Allison and therefore involuntary because, when he made the threat, Allison did not have subjective probable cause to arrest defendant.[2] Consequently, the Court of Appeals concluded that the trial court should have suppressed defendant's pretrial statements and the results of the chemical analysis. The Court of Appeals also concluded that those errors were not harmless; as a result, it reversed defendant's convictions and remanded for a new trial. *State v. Coen*, 203 Or App 92, 125 P3d 761 (2005), *rev den*, 341 Or 141, 139 P3d 259 (2006) (*Coen I*).

On remand, both the state and defendant moved for pretrial rulings on the admissibility of certain evidence. To prove that defendant had acted with a reckless mental state, the state offered evidence that defendant had participated in a DUII diversion program based on a 1992 incident, and that defendant had been convicted of DUII in 1997.[3] Specifically, the state sought to show that, at the time of the collision, defendant knew the risks involved in driving under the influence of intoxicants. The trial court ruled that evidence of defendant's participation in the diversion program was

---

[2] After *Coen I* was decided, this court issued its opinion in *State v. Machuca*, 347 Or 644, 657, 227 P3d 729 (2010). In that case, this court held that, in certain circumstances, "for purposes of the Oregon Constitution, the evanescent nature of a suspect's blood alcohol content is an exigent circumstance that will ordinarily permit a warrantless blood draw[.]" Neither party has raised the applicability of that decision here, and we thus do not address it.

[3] ORS 163.125(1) provides, in part:

"Criminal homicide constitutes manslaughter in the second degree when:

"(a) It is committed recklessly[.]"

In turn, ORS 161.085(9) provides:

" 'Recklessly,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

admissible, but ordered that defendant's 1997 DUII conviction be excluded. Defendant, on the other hand, sought to suppress his testimony from the first trial, arguing that he had testified only to rebut the illegally obtained statements that he had made to Trooper Allison at the hospital, and which the trial court had erroneously admitted into evidence in his first trial. The trial court agreed and ordered that defendant's trial testimony be excluded from the retrial, reasoning that "[i]t is clear that the defendant only testified in order to counter the use of the illegally obtained blood draw and his statements."

The state appealed. ORS 138.060(1)(c).[4] The Court of Appeals reversed in part and affirmed in part, concluding that the trial court had erred in excluding defendant's DUII conviction. However, the Court of Appeals affirmed the trial court's order excluding defendant's trial testimony. The court determined that evidence of defendant's past DUII conviction was relevant to prove defendant's state of mind, rejecting defendant's argument that OEC 404(4)—discussed *post*, at 386-91—is unconstitutional because it prevents a court from excluding evidence that is unfairly prejudicial. Finally, the Court of Appeals determined that the state's claim that the trial court had erred in suppressing defendant's prior trial testimony was foreclosed by the Court of Appeals' recent decision in *Moore*.

Defendant and the state both sought review of that decision, and we allowed both petitions. On review, the state asserts that the Court of Appeals incorrectly relied on this court's decision in *McGinnis* to affirm the trial court's pretrial order suppressing defendant's trial testimony. As in *Moore*, the state agrees that defendant's pretrial statements to the trooper were obtained in violation of Article I, section 12, but asserts that those statements were not "actually coerced." According to the state, because defendant's prior trial testimony was not "induced" by the erroneous admission of

---

[4] ORS 138.060(1)(c) provides:

"The state may take an appeal from the circuit court to the Court of Appeals from:

"* * * * *

"(c) An order made prior to trial suppressing evidence[.]"

"actually coerced" incriminating statements, that testimony should be admissible on retrial. Defendant, in turn, asserts that the trial court properly excluded evidence of his prior DUII conviction, and that the Court of Appeals erroneously decided that issue.

## II. DISCUSSION

On review, the state acknowledges that, in both of these cases, the statements that defendants made to the police officers were not preceded by *Miranda* warnings and were obtained under compelling circumstances, in violation of Article I, section 12, of the Oregon Constitution. However, as explained above, the state argues that, unless erroneously admitted pretrial statements were "actually coerced," Article I, section 12, permits their use to establish "harmless error" or as evidence of a defendant's guilt on retrial when made as part of a defendant's trial testimony.[5] Because the parties devote the bulk of their briefing to this court's decision in *McGinnis*, we begin there.

In *McGinnis*, the defendant was charged with selling marijuana to an undercover informant, Diemer. 335 Or at 245. During the transaction, Diemer had worn a hidden radio transmitter, known as a body wire, and a police officer recorded the conversation at a remote location. The trial court admitted the recording into evidence over the defendant's objection. After its admission, the defendant testified in his own defense. Although he conceded that he had engaged in a drug transaction with Diemer, the defendant attempted to portray Diemer as the seller. The defendant testified at trial that Diemer had wanted to buy back some marijuana that he previously had sold to the defendant and that the defendant had complied with Diemer's request. *Id.* at 246. A jury convicted defendant of unlawful delivery of a controlled substance for consideration, *former* ORS 475.992 (2003), *renumbered as* ORS 472.840 (2005). Although the Court of Appeals concluded that the body wire evidence should have been suppressed, it nevertheless affirmed the defendant's conviction, holding that, because the defendant

---

[5] "Harmless error" requires consideration of a single question: whether there was little likelihood that the particular error affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003).

had testified that he had engaged in an illegal drug transaction, the body wire evidence was cumulative, rendering the error, if any, harmless.

On review in this court, the defendant, relying on *Harrison v. United States*, 392 US 219, 88 S Ct 2008, 20 L Ed 2d 1047 (1968), contended that the Court of Appeals had erred in considering the defendant's trial testimony in holding that the defendant had not been harmed by the erroneously admitted body wire recording. The defendant argued that this court should adopt a rule precluding consideration of a defendant's trial testimony in a review for harmless error when the defendant's testimony had been compelled to rebut illegally admitted evidence.

In considering that argument, this court observed that the improper use of a defendant's illegally obtained statements implicates a defendant's testimonial rights and concluded that

> "[t]he rule of *Harrison* is limited to those circumstances in which a defendant is compelled to testify at trial as a result of the Fifth Amendment violation that occurs when an illegally obtained confession is used against that defendant at trial. Stated otherwise, a defendant cannot invoke the protection of the *Harrison* rule unless the evidence that the defendant sought to rebut by taking the stand was an inadmissible *confession*, not evidence of some other kind, even if that evidence was obtained illegally."

*McGinnis*, 335 Or at 253 (emphasis in original). The court then stated, "That said, the United States Supreme Court's rule in *Harrison* does not preclude this court from fashioning a different rule under Oregon constitutional or statutory law. However, we are persuaded by the logic of that Court's rule." *Id.* at 253.

This court went on to hold that the police had violated *former* ORS 133.724 because they had not obtained an *ex parte* court order before using a body wire. The court determined that the violation of that statute required suppression of the recording but nevertheless affirmed the defendant's conviction after conducting a harmless error analysis. The court held that the recorded statements "were not the product of compulsion by law enforcement." *Id.* at 253. Because

the recorded statements were "not compelled in any way," and thus did not implicate the constitution, the court concluded that there was "no reason to exclude defendant's [trial] testimony from a review of the record for harmless error." *Id.* at 254.

Here, although the Court of Appeals based both of its decisions on *McGinnis* and, on review, the parties focus much of their argument on that decision, *McGinnis* dealt with a statutory violation, not a constitutional one.[6] Moreover, although *McGinnis* involved erroneously admitted incriminating statements, there was no question in that case that the defendant's wire-recorded statements were voluntarily made. Thus, although *McGinnis* concluded that the rule fashioned by the United States Supreme Court in *Harrison* was appropriate for "Oregon constitutional [and] statutory law," that conclusion was broader than the issue actually before the court. In fact, *McGinnis*'s holding does not directly address the constitutional question presented in these cases. To answer that question, we must again examine the nature of the Article I, section 12, right against compelled self-incrimination and our case law interpreting that provision.

■■  Article I, section 12, provides, in part, that "[n]o person shall * * * be compelled in any criminal prosecution to testify against himself." In Oregon, Article I, section 12, is an independent source for warnings similar to those required under the Fifth Amendment to the United States Constitution by *Miranda v. Arizona*, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966). *See State v. Magee*, 304 Or 261, 266, 744 P2d 250 (1987) (so stating). Under Article I, section 12, the police must give a defendant who is in custody *Miranda*-like warnings prior to questioning. *Id.* In addition, *Miranda*-like warnings also are required in circumstances that, although they do not rise to the level of full custody, nevertheless create a "setting which judges would and officers should recognize to be 'compelling.' " *State v. Smith*, 310 Or 1, 7, 791 P2d 836 (1990) (quoting *Magee*, 304 Or at 265).

---

[6] ORS 136.432, which did not apply when the defendant in *McGinnis* was convicted, now provides that a court may *not* exclude otherwise admissible evidence solely on the ground that the evidence was obtained in violation of a statute.

When police officers obtain pretrial statements from a defendant in violation of Article I, section 12, this court has held that such statements must be excluded at trial in order to restore the defendant to the position that he or she would have been in if police had not violated that constitutional right. *See State v. Simonson*, 319 Or 510, 518-19, 878 P2d 409 (1994) (adopting rationale from *State v. Davis*, 313 Or 246, 834 P2d 1008 (1992)).

Recently, in *State v. Vondehn*, 348 Or 462, 474, 236 P3d 691 (2010), this court observed that:

"Article I, section 12, affords a constitutional right to remain silent. That right is, however, subject to waiver. Because a custodial interrogation is inherently compelling, and to ensure the validity of a waiver of the right against self-incrimination, Article I, section 12, requires that the police inform a person subjected to custodial interrogation that he or she has a right to remain silent and to consult with counsel and that any statements that the person makes may be used against the person in a criminal prosecution. Article I, section 12, requires those *Miranda* warnings to ensure that a person's waiver is knowing as well as voluntary. If the police conduct a custodial interrogation without first obtaining a knowing and voluntary waiver of the suspect's rights, then they violate the suspect's Article I, section 12, rights. To give effect to those constitutional rights, the state is precluded from using, in a criminal prosecution, statements made in response to the interrogation."

The state agrees that it is appropriate to exclude a defendant's trial testimony on retrial or harmless error review when that testimony was *compelled* by the erroneous admission of what the state refers to as "actually coerced" pretrial statements.[7] However, as noted above, the state argues that,

---

[7] In its brief, the state describes the *Harrison* rule as requiring a court to conclude that a defendant's trial testimony was "compelled" by the erroneous admission of the unconstitutionally obtained statement. However, in *Harrison*, the Court used the words "induced" or "impelled" to describe the connection necessary between the erroneously admitted statements and a defendant's trial testimony: "Having 'released the spring' by using the petitioner's unlawfully obtained confession against him, the government must show that its illegal action did not *induce* his testimony." 392 US at 225 (emphasis added). As we shall explain, we do not find it necessary to use the words "induced," "impelled," or "compelled" in describing the rationale for excluding a defendant's trial testimony on retrial or from consideration by an appellate court when reviewing for harmless error.

because in these two cases defendants' pretrial statements here were not "actually coerced," their trial testimony is admissible on retrial or available for harmless error review by an appellate court.

■　　Because the pretrial statements at issue in *McGinnis* were not obtained in violation of the Oregon Constitution, the court had no occasion to determine whether the *Harrison* rule should be applied only when pretrial statements are "actually coerced" as the state claims, or whether the rule is applicable to the erroneous admission of any statements obtained in violation of Article I, section 12. In *Vondehn*, however, the state similarly argued that, although it was proper to exclude physical evidence derived from statements obtained by "actual coercion," the "mere failure to provide *Miranda* warnings" should not result in the exclusion of physical evidence derived from such statements. This court rejected the state's argument, holding that:

> "It is the Oregon Constitution that requires *Miranda* warnings and it is the Oregon Constitution that is violated when those warnings are not given. When the police violate Article I, section 12, whether that violation consists of 'actual coercion' or the failure to give the warnings necessary to a knowing and voluntary waiver, the state is precluded from using evidence derived from that violation to obtain a criminal conviction."

348 Or at 475-76. It follows that, in determining whether exclusion of a defendant's trial testimony on retrial or from harmless error review is warranted, no distinction should be made under Article I, section 12, between statements unconstitutionally obtained by "actual coercion" and statements unconstitutionally obtained through police interrogation not preceded by the constitutionally required warnings.

We observe, as did the court in *Harrison*, that, it is "difficult to unravel the many considerations" that may lead a defendant to testify at trial. 392 US at 224. Under our system of criminal justice, there are a variety of ways for a defendant to respond to erroneously admitted pretrial statements without testifying in court about those statements. In the usual case, a defendant decides whether to testify at trial with the advice of counsel and is likely to consider a variety of

factors and circumstances, not just the state's intended use of his or her pretrial statements. It is that reality that causes us to reject the use of the terms *compelled, induced,* or *impelled* in describing the connection between erroneously admitted pretrial statements and a defendant's trial testimony that justifies the suppression of a defendant's trial testimony.

Given the difficulty of "unravelling" all the factors that may have contributed to a defendant's decision to testify at trial—and because the state has gained an advantage over a defendant at trial when it unconstitutionally obtains the defendant's statements and then introduces them into evidence—we conclude that it is more appropriate to assume that a defendant's trial testimony is *tainted* by the erroneously admitted pretrial statements. Therefore, a defendant's trial testimony must be excluded on retrial or from harmless error review by an appellate court unless the court can determine from the record before it that a defendant's trial testimony did not refute, explain, or qualify the erroneously admitted pretrial statements.[8] The standard we have identified using the terms, *refute, explain,* or *qualify* is intended to be applied objectively, taking into account the substantive content of such testimony under the totality of the circumstances of the case. With that understanding, we turn to the state's arguments regarding defendants' testimony here.

## A. *State v. Moore*

In *Moore,* the state now concedes that the trial court should have suppressed the incriminating statements that defendant made to the trooper while he was handcuffed in the patrol car. The state asserts, however, that admission of those incriminating statements did not "compel" defendant to testify. The state argues that a review of the record, including defendant's testimony and defense counsel's opening and closing statements, confirms that defendant would have testified regardless of whether his incriminating statements

---

[8] Consistently with that observation, the rule we announce and apply in these cases is confined solely to issues involving the erroneous admission of unconstitutionally obtained pretrial statements. In *McGinnis,* this court observed that "the rule of *Harrison* concerns the consequences of using a defendant's compelled statements at trial, not the consequences of using any other illegally obtained evidence." 335 Or at 252.

were admitted at trial. The state argues that, given defendant's position that his initial response to the trooper was a reference to the disassembled rifle piece, and that he did not know that the functioning rifle had been left in the truck until he turned to retrieve the disassembled rifle piece, defendant may have decided to testify about the statements to suggest that they were the product of confusion or coercion. The state asserts that defendant "absolutely needed to testify to 'explain away' " his admissible statement that his "friend's gun" was in the truck. Defendant responds that the state is engaging in speculation regarding what defendant would have done if the trial court had not admitted the incriminating statements. Defendant asserts that it is just as likely that, instead of testifying, he would have called his passenger to testify about defendant's initial response to the trooper, because the passenger was present during that exchange and could testify concerning defendant's answers.

In his trial testimony, defendant essentially denied that he knew that the functioning rifle was in the vehicle. In so testifying, defendant did not in any way admit that his pretrial statements were true. In this case, because defendant's trial testimony in and of itself could not support a finding of guilt, we need not determine whether defendant's testimony refuted, explained, or qualified the erroneously admitted pretrial statements. That is so because, even considering defendant's trial testimony as part of our review for harmless error, it is obvious that the erroneously admitted statements likely affected the verdict. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (Oregon's constitutional test for affirmance despite error consists of a single inquiry: Is there little likelihood that the particular error affected the verdict?). We therefore conclude, albeit for different reasons, that the Court of Appeals correctly reversed the trial court judgment and remanded for a new trial.

B.   *State v. Coen (Coen II)*

In *Coen II*, the state does not argue that defendant's decision to testify at trial was untainted by the erroneous admission of his unconstitutionally obtained statements.[9] We

---

[9] We note that, on remand, the state did not offer the blood draw evidence at issue on the first appeal and instead offered evidence of a separate "medical" blood

therefore conclude that the Court of Appeals properly affirmed the trial court's suppression of defendant's previous trial testimony for purposes of retrial.

## C.  OEC 404(4)

We now address an issue raised only in *Coen II* and which is an issue of first impression for this court. As noted above, the state offered evidence that defendant had participated in a DUII diversion program for an incident that occurred in 1992 and had later been convicted of DUII in 1997. According to the state, that evidence was admissible to prove that defendant had acted with a reckless mental state at the time of the collision, *i.e.*, defendant knew of the risks involved in driving under the influence of intoxicants. The trial court admitted evidence of the diversion program, but excluded evidence of the 1997 DUII conviction. The court concluded that, "[a]lthough the conviction may be relevant, it is clearly being offered to show defendant's bad character or propensity[,] since the defendant's prior diversion is already coming in for state of mind."

On appeal, the state asserted that OEC 404(4), set out below, precluded the trial court from engaging in the balancing analysis provided by OEC 403.[10] Defendant countered that OEC 404(4) is facially unconstitutional because it limits application of OEC 403 balancing in any way that benefits only the prosecution. Defendant argued that OEC 404(4) is a "one-sided" rule, and thus "violate[s] the federal constitutional due process principle that rules of procedure generally be equally available to the prosecution and to criminal defendants." According to defendant, in order to comply with due process, OEC 404(4) must be construed to allow OEC 403 balancing. The Court of Appeals rejected defendant's arguments. Relying on its prior case law, the Court of Appeals

---

draw that the trial court concluded was admissible. The state makes no argument in this court that the admission of either form of blood draw evidence is pertinent to the resolution of the question now before us.

[10] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

determined that evidence of a prior DUII conviction is relevant to demonstrate a defendant's state of mind in a prosecution for vehicular manslaughter, and that OEC 404(4) does not violate due process. *Coen II*, 231 Or App at 284-85.

On review, defendant again challenges the constitutionality of OEC 404(4), raising both facial and "as applied" challenges. Defendant argues that OEC 403 codifies a due process principle that ensures that prosecutions are conducted in a fundamentally fair manner. Defendant argues that OEC 403 balancing serves as a "primary and necessary component" in determining whether evidence may be admitted without endangering a defendant's right to a fair trial. According to defendant, because OEC 404(4) omits the use of OEC 403 balancing in criminal prosecutions, OEC 404(4) violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

We begin our analysis with the text of the rule at issue. OEC 404(4) provides, in part:

"In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by:

"(a)   [OEC 406 to 412] and, to the extent required by the United States Constitution or the Oregon Constitution, [OEC 403];

"* * * * *

"(c)   The Oregon Constitution; and

"(d)   The United States Constitution."

In determining whether a state rule violates due process, the United States Supreme Court has stated that the question is whether the rule "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Patterson v. New York*, 432 US 197, 201-02, 97 S Ct 2319, 53 L Ed 2d 281 (1977). According to the Supreme Court, it is normally "within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion, and [the state's] decision in this regard is not subject to proscription under the Due

Process Clause." *Id*. (internal quotation marks omitted). The Supreme Court also has observed that, "[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation. We, therefore, have defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. U.S.*, 493 US 342, 352, 110 S Ct 668, 107 L Ed 2d 708 (1990).

This court previously has stated that OEC 404(4) "clearly qualifies as an evidentiary change in the law that favors only the prosecution by making the conviction of a defendant more likely." *See State v. Shaw*, 338 Or 586, 613, 113 P3d 898 (2005) (declining to apply OEC 404(4) on defendant's appeal because to do so would violate *ex post facto* clause of Oregon Constitution). That said, however, the text of the rule undermines defendant's facial challenge. As noted, OEC 404(4) provides that "[i]n criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by" the state or federal constitution or by some other statute. Thus, under OEC 404(4), traditional standards of relevancy are preserved, and in all events, no evidence may be admitted that would violate state and federal constitutional standards.

Despite the constitutional protection expressed in the text of the rule, defendant, relying primarily on *Wardius v. Oregon*, 412 US 470, 472, 93 S Ct 2208, 37 L Ed 2d 82 (1973), argues that, to the extent that OEC 404(4) deprives a defendant "of the same, full use of OEC 403 that the prosecution enjoys, it violates the due process principle requiring that criminal defendants enjoy equal access to court procedures that the prosecution enjoys."

In *Wardius*, the Supreme Court scrutinized an Oregon statute that required a defendant to notify the prosecution of any alibi defenses and witnesses. If the defendant failed to do so, the defendant could not rely on that defense or those alibi witnesses at trial. The statute did not contain any requirement that the state provide reciprocal discovery to the defendant of witnesses it planned to use to refute the alibi defense. *Id*. The Court explained that it was "particularly suspicious of state trial rules which provide nonreciprocal benefits to the State when the lack of reciprocity interferes

with the defendant's ability to secure a fair trial." *Id.* at 475 n 6. The Court concluded that the statute impaired the defendant's rights to a fair trial in violation of the Due Process Clause, stating that "[i]t is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State." *Id.* at 476.

In *State v. Upton*, 339 Or 673, 125 P3d 713 (2005), this court rejected a *Wardius*-based argument that was similar to the one defendant makes here:

> "*Wardius*, however, does not require that every procedure relating to both a defendant and the state ensure identical rights in order to satisfy due process. Rather, *Wardius* addressed only a narrow procedural requirement that is not at issue here. In *Wardius*, the Court held that a statute may not require a defendant—who has no burden of proof at trial—to disclose certain alibi witnesses, when the state had no comparable obligation to disclose its witnesses. The holding in *Wardius*, however, did not establish a constitutional rule that a defendant and the state must be treated identically in all respects."

*Id.* at 686-87 (internal citation omitted).

Here, although OEC 404(4) does not expressly provide a reciprocal benefit to a criminal defendant, a defendant may nevertheless introduce evidence of other crimes or wrongful acts—for example, by a victim, codefendant, or other suspect—under OEC 404(3), which provides:

> "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

*See State v. Cox*, 337 Or 477, 98 P3d 1103 (2004) (OEC 404(3) did not preclude defendant from introducing evidence of other crimes committed by victim to prove that defendant reasonably believed that he needed to protect himself from victim). Thus, the fact that the state may introduce evidence of other crimes, wrongs, or acts by a defendant under OEC

404(4) does not prevent a defendant from presenting a complete defense, as did the statute under consideration in *Wardius*.

Finally, as we understand defendant's "as applied" challenge,[11] he argues that OEC 404(4) is fundamentally unfair because juries may use the evidence admitted under OEC 404(4) as evidence of the defendant's bad character and "return a vengeful verdict." However, in *Spencer v. Texas*, 385 US 554, 87 S Ct 648, 17 L Ed 2d 606 (1967), the Supreme Court rejected a similar due process challenge to a Texas habitual criminal statute after the trial court permitted the introduction of evidence concerning defendant's convictions for the same or a similar offense and provided a limiting instruction to the jury that it was to consider the other bad acts for noncharacter purpose only. In so holding, the Court observed that, even though such evidence is generally recognized at common law to create a potential for prejudice, that possibility is outweighed for purposes of due process where the evidence is particularly probative of another fact in issue, such as an element of a crime. *Id.* at 561-63.

■■ Here, the state offered the DUII evidence to prove that defendant had acted with a reckless mental state, an element of second-degree manslaughter, for which the state had the burden of proof. Without question, that evidence is relevant for the purpose for which the state intends to offer it. And it is well settled in this state that trial courts have the authority to give limiting instructions to juries that require them to consider evidence only for a particular purpose or in regard to a particular element, and we have long presumed that juries follow those instructions. *See State v. Thompson*, 328 Or 248, 271, 971 P2d 879, *cert den*, 527 US 1042, 119 S Ct 2407, 144 L Ed 2d 805 (1999) (jurors are presumed to follow a

---

[11] We describe this aspect of defendant's constitutional challenge as an "as applied" challenge because, in ordering defendant's DUII conviction excluded, the trial court concluded that, "[a]lthough the conviction may be relevant, it is clearly being offered to show defendant's bad character or propensity since defendant's prior diversion is already coming in for state of mind." In doing so, the trial court necessarily considered the nature of the evidence offered by the state and engaged in an analysis specific to the case in concluding that the admission of the evidence would violate the constitution.

trial court's instructions). To the extent the trial court concluded that admission of the evidence would violate the state or federal constitution, it erred.[12] Based on the foregoing, we reject defendant's final constitutional claim. The Court of Appeals correctly reversed the trial court's ruling excluding evidence of defendant's prior DUII conviction.

In *State v. Moore*, S057820, the decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

In *State v. Coen*, S058145/S058152, the decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.

---

[12] We do not hold that the trial court erred in considering defendant's argument that admission of the DUII conviction was unfairly prejudicial to the degree that its admission would violate the state and federal constitutions. Rather, we hold that the trial court erred in concluding that the evidence would be unfairly prejudicial and therefore violate the due process clause of the federal constitution.