Submitted December 22, 2015, affirmed September 7, 2017, petition for review denied February 15, 2018 (362 Or 508)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

GEORGE EARL McLEAN,
*Defendant-Appellant.*

Grant County Circuit Court
1311304CR; A156959

401 P3d 252

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Kristin A. Carveth, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Paul L. Smith, Deputy Solicitor General, and Peenesh H. Shah, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Hadlock, Chief Judge, and Egan, Judge.

**HADLOCK, C. J.,** concurring.

I agree with the majority that the outcome in this case is dictated by *State v. Bouthillier*, 4 Or App 145, 149, 479 P2d 512 (1970) (on rehearing), *rev den* (1971). Moreover, defendant has not argued that we should overrule that decision as "plainly wrong," and, absent argument from the parties, I am not persuaded that that demanding standard is met in these circumstances. *See State v. Civil*, 283 Or App 395, 406, 388 P3d 1185 (2017) (Court of Appeals overrules its own precedent only when that precedent is "'plainly wrong,' a rigorous standard grounded in presumptive fidelity to *stare decisis*"). Accordingly, I concur in the majority's affirmance of the judgment of conviction on the ground that the trial court's error was harmless as described in *Bouthillier*. I write separately, however, to express my doubts about the continuing viability of *Bouthillier* in light of our modern harmless-error cases.

I start by describing the events leading to defendant's trial. Defendant was charged with multiple crimes arising from a November 2013 assault on the victim, defendant's former girlfriend. Before trial, defendant moved *in limine* for an order admitting evidence that the victim had pleaded guilty to perjury in mid-2013. The victim had entered that plea in conjunction with a diversion agreement in which entry of a judgment of conviction was deferred while the victim worked to satisfy the diversion agreement's requirements. Defendant anticipated that the state would call the victim as a witness and he argued that, if the state did so, evidence of the victim's guilty plea to perjury would be admissible for impeachment purposes. The trial court excluded evidence of the victim's guilty plea on the ground that no conviction had yet been entered. Defendant's case was then tried to a jury in 2014 and he was convicted of attempted fourth-degree assault, strangulation, and menacing.[1]

On appeal, defendant assigns error to the trial court's ruling that excluded evidence of the victim's guilty plea to perjury. He contends that the victim's guilty plea

---

[1] The first of those convictions actually is for "Attempt to Commit a Class A Misdemeanor—Assault-4, ORS 161.405(2)(e)."

meant that the victim had been "convicted" of perjury for purposes of OEC 609(1).[2] Accordingly, defendant argues, the victim's plea was admissible for impeachment purposes. Defendant relies on *State v. Smith*, 298 Or 173, 691 P2d 89 (1984), for the proposition that the word "convicted," as used in OEC 609(1), refers to a factual determination of guilt, and *not* to entry of a judgment of conviction. *See Smith*, 298 Or at 182 (so holding). Defendant further argues that the trial court's exclusion of evidence of the victim's guilty plea was not harmless because, given that the only two witnesses to the incident were defendant and the victim, it was likely that the victim's credibility was significant to the jury's decision. Defendant points out that the trial court acknowledged that the excluded evidence "would be something very helpful to your client to be able to impeach in that way."

In response, the state concedes that, under *Smith*, the trial court erred in excluding evidence of the victim's guilty plea. I agree with the parties that the trial court erred in excluding that evidence. Nonetheless, the state argues that the error was harmless and therefore does not warrant reversal. In making that harmless-error argument, the state does *not* challenge defendant's contention that exclusion of the evidence could have affected the jury's verdict at the 2014 trial. Instead, the state's argument is based on its view of what would happen if we reversed defendant's judgment of conviction and defendant was tried again on remand. That argument is based on two premises that, together, lead to the state's conclusion. First, the state asserts that the victim has now completed her diversion program and her perjury case has been dismissed without entry of judgment.[3]

---

[2] OEC 609(1) provides, in pertinent part:

"For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record, but only if the crime:

"(a) Was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted; or

"(b) Involved false statement or dishonesty."

[3] The state has provided us with OECI records from the victim's perjury case demonstrating that the case was dismissed in late 2014, after the victim completed diversion (and after the trial occurred in defendant's case). Defendant has not challenged the accuracy of those records or the state's characterization of their significance.

Second, also relying on *Smith*, the state contends that, when the victim completed her diversion agreement and the perjury charge was dismissed, her guilty plea to perjury could no longer be used to impeach her. *See Smith*, 298 Or at 182 n 5 ("If the finding of guilt * * * is duly set aside as, for example, in the granting of a motion for a new trial by a trial court, the 'conviction' by the trier of fact could not be used for impeachment purposes."). Based on those two premises, the state concludes that, "even if this court were to grant a new trial, defendant would not be able to impeach the victim in that new trial, and that new trial would therefore unfold exactly as his original trial did." Put differently, the state contends that—whether or not the error in excluding the victim's guilty plea was harmless at defendant's 2014 trial—the error "has been rendered harmless by the subsequent dismissal of [the victim's] perjury prosecution," resulting, in the state's view, in "no object [being] served by a new trial."

In support of its contention that the trial court's error *became* harmless when the victim's perjury case was later dismissed, the state relies on *Bouthillier*. In that case, we concluded that the trial court had erroneously admitted impeachment evidence that, under then-current law, was inadmissible. *State v. Bouthillier*, 4 Or App 145, 146-47, 476 P2d 209, *modified on reh'g*, 4 Or App 149, 479 P2d 512 (1970), *rev den* (1971). Specifically, the trial court had erroneously allowed impeachment of a witness with evidence that a jury had found the witness guilty of armed robbery, even though no conviction for that crime had yet been entered.[4] Accordingly, we reversed, holding that the error in allowing impeachment of the witness was not harmless. *Id.* at 149. The state then sought rehearing, asserting that the error had *become* harmless because—although the witness had been improperly impeached at the time of trial—the witness's guilt on the armed-robbery charge subsequently had been reduced to a final judgment. We agreed:

> "On a new trial [the witness's] credibility could be impeached just as it was in the previous trial, this time without error. We agree that the error involved in allowing

---

[4] At that time, under statutes predating the Oregon Evidence Code and OEC 609(1), a verdict of guilt could not be used for impeachment unless a judgment of conviction had been entered. *Bouthillier*, 4 Or App at 147.

> evidence of a jury conviction \*\*\* on which judgment has not been entered, *though not harmless at the time, has been rendered harmless* by the judgment subsequently entered. No meritorious object would be served by a new trial. Defendant has not been prejudiced by the error and the judgment should be affirmed."

*Id.* at 150 (emphasis added). Accordingly, we withdrew the previous disposition—a reversal and remand for a new trial—and affirmed. *Id.*

*Bouthillier* thus seems to stand for the proposition that, when a trial court commits evidentiary error that prejudices a party at trial, we nonetheless will not reverse and remand for a new trial if subsequent factual developments mean that the evidence that erroneously was admitted at the first trial could properly be admitted at the retrial. That is, the evidentiary error *becomes* harmless if, upon retrial, the trial court could admit the same evidence that it should have excluded at the original trial, but didn't. Presumably, the same principle would apply with respect to erroneously excluded evidence: If subsequent factual developments mean that the evidence *properly* would be excluded upon retrial, under *Bouthillier*, we would deem its erroneous exclusion at the original trial to have become harmless.

*Bouthillier* therefore dictates the outcome in this case. The trial court erroneously prohibited defendant from impeaching the victim with her guilty plea to perjury. Although we otherwise would consider that error not to be harmless, given the importance of the victim's testimony to the state's case, that error is *now* harmless because, if defendant were retried, then he would not be able to use that guilty plea to impeach the victim because the perjury charge against her has since been dismissed. *See* OEC 609(3)(b) (evidence of conviction is not admissible under OEC 609 if the conviction "has been expunged by pardon, reversed, set aside or otherwise rendered nugatory"); *Smith*, 298 Or at 182 n 5 ("If the finding of guilt \*\*\* is duly set aside as, for example, in the granting of a motion for a new trial by a trial court, the 'conviction' by the trier of fact could not be used for impeachment purposes."); *see also* ORS 135.901(2) ("If the district attorney informs the court at the termination of the

diversion period that the defendant has fulfilled the terms of the diversion agreement, the court shall dismiss with prejudice the criminal charges filed against the defendant."). Accordingly, I concur in the majority's decision affirming the judgment in this case.

Nonetheless, I write separately because I question the continuing vitality of *Bouthillier* and hope that, in another case, the parties will explore whether that decision is consistent with the Supreme Court's more recent explanations of how Oregon appellate courts should go about determining whether trial-court error was harmless. My doubt arises because the Supreme Court has repeatedly emphasized that the harmless-error analysis reduces to a single inquiry: "Is there little likelihood that the particular error *affected the verdict*?" *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (emphasis added; cited or quoted in, among others, *State v. Hickman*, 355 Or 715, 749, 330 P3d 551 (2014), *adh'd to as modified on recons*, 356 Or 687, 343 P3d 634, *cert den*, ___ US ___, 136 S Ct 230 (2015); *State v. Miskell / Sinibaldi*, 351 Or 680, 699, 277 P3d 522 (2012); and *State v. Moore / Coen*, 349 Or 371, 386, 245 P3d 101 (2010), *cert den*, 563 US 996 (2011)).

That single inquiry is focused entirely on the effect of the error on the trial that occurred. I am not aware of any case in which the Supreme Court has taken the very different approach contemplated by *Bouthillier*—that is, analyzing whether post-judgment factual events mean that trial-court error has *become* harmless because evidence that erroneously was admitted (or excluded) at the original trial could properly be admitted (or excluded) on retrial. Nor am I aware of any recent case in which we have conducted a harmless-error analysis that is dependent on events that occurred after the trial and entry of judgment.[5]

---

[5] I acknowledge that we rely on post-trial changes to the *law* in determining whether a trial court has erred in a way that requires reversal. *See State v. Jury*, 185 Or App 132, 136, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003) ("Error, in general, must be determined by the law existing at the time the appeal is decided, and not as of the time of trial."). Thus, under *Jury*, even when a trial court made a ruling that was erroneous at the time of trial, we will not reverse for a new trial if, under the changed law that exists by the time we decide the case on appeal, the trial court's ruling has, essentially, retroactively been rendered correct. *Id.* at 137.

The *Bouthillier* approach also raises troubling questions about how far an appellate court may go when determining whether post-judgment events have rendered harmless an otherwise prejudicial trial-court error. A hypothetical example illustrates the difficulty. Suppose a trial court erroneously excluded testimony of a defendant's alibi witness in a way that was likely to have influenced the jury's verdict convicting the defendant of a crime. On appeal, if the state established that the alibi witness had since died, would we then affirm the defendant's conviction on the ground that the alibi witness would not be able to testify at a new trial anyway? Again, the reasoning followed in *Bouthillier* at least arguably suggests that the answer to that question would be "yes."

That cannot be the law. It is not our role to speculate as to a probable outcome at a retrial. *Cf. Davis*, 336 Or at 32 ("The correct focus of the inquiry regarding affirmance despite error is on the possible influence of the error on the verdict rendered, not whether this court, sitting as a factfinder, would regard the evidence of guilt as substantial and compelling."). Moreover, any such endeavor could be daunting. Witnesses' memories may shift; witnesses may become unavailable for a variety of reasons (and previously unavailable potential witnesses may become available); the parties' motivations for taking various positions may change over time; and, indeed, a new set of jurors may take a different view of the same evidence that was admitted in the original trial. All of those circumstances, among others, mean that a new trial on remand following any appeal may well look very different from the trial that originally occurred, or lead to a different result.

---

Perhaps an argument can be made, extending the principles that drove this court's decision in *Jury*, that this court should take a similar approach when the *facts* have changed post-trial in a way that allows this court to conclude that a trial on remand would not look meaningfully different from the trial that has already occurred. Perhaps such a *Bouthillier*-like approach to harmless-error analysis could be reserved for certain types of cases, or might be invoked only in response to specific categories of trial-court error. But this appeal does not present an appropriate opportunity for us to analyze whether such an approach ever could be reconciled with cases like *Davis* and, if so, in what circumstances. Those questions must await an appeal in which the parties have fully addressed the continuing viability of *Bouthillier*.

In light of that reality, I do not agree that "[n]o meritorious object would be served" by reversing and remanding when a criminal defendant has been prejudiced by errors that occurred at his or her trial. *Bouthillier*, 4 Or App at 150. The defendant is entitled to a new trial under those circumstances—a trial that comports with the law or, at the least, a trial in which any errors that occur are unlikely to influence the verdict. *Cf. Walraven v. Premo*, 277 Or App 264, 277, 372 P3d 1 (2016) (in a post-conviction case, a petitioner who was prejudicially deprived of adequate counsel at the underlying criminal trial is entitled to post-conviction relief in the form of a new trial despite having made damning post-judgment admissions because "we cannot foresee the panoply of circumstances extant in a retrial of the charges").

Nonetheless, our holding in *Bouthillier* exists, it is directly on point with this case, and nobody has argued to us that it is plainly wrong and should be overruled. *Cf. Farmers Ins. Co. v. Mowry*, 350 Or 686, 704, 261 P3d 1 (2011) ("The proponent of overturning precedent bears the burden of demonstrating why prior case law should be abandoned."). Accordingly, I concur with the majority that defendant's conviction must be affirmed.